### RICHARDS v. MUNRO.

1. In action by the executor of a deceased father against the administrator of a deceased son to recover the amount of a note of the son paid by the father as surety, the defence was that the payment was intended by the father as a gift. *Held*, that statements made by the father at the time of this payment were competent testimony in support of the defence, they being admissions against his interest, and the plaintiff being his privy by representation.

2. The fact that the father had made a will does not prevent defendant from showing a parol gift inconsistent with the provisions of such will.

3. The defendant testified that he, while administrator, had had repeated conversations with this father in relation to the settlement of the son's estate, and that the father had knowledge of the administration, but never made any demand for a payment of this note. *Held*, that this was not testimony as to any transaction or communication with the deceased, and therefore not incompetent under section 400 of the Code.

4. In reply, plaintiff was offered as a witness to prove the substance of conversations with his testator concerning the matter at issue, and to prove what directions testator had given him about the note. *Held* incompetent testimony under section 400 of the Code.

5. The charge in this case, when read as a whole, was not a charge on the facts.

6. An exception by plaintiff complained that he was required to make his challenges to the jury successively and not alternately with defendant; but no foundation for this exception appeared in the "Case." *Held*, not a ground for new trial.

Before ALDRICH, J., Union, March, 1887.

Action by John C. Richards, as executor of James A. Tucker, against James Munro, administrator of William J. Tucker. The judge charged the jury as follows:

This case has excited some interest in the community, and it is an interesting case to the parties concerned. A jury have heard this case before and failed to come to a conclusion as to what was the intent of this old gentleman in that will. This old gentleman had two sons, it seems, George and William. George left one son and William left four children, and in his will, as I gathered from the argument—it has not been read—he gives George one-half of his estate, and the children of William the other half, George's being the most valuable. He had a note against his son William for $1,900, about $2,000, and the simple question for you is, what did he do with that note? Now, the only rule of law in this case, by which you will be governed, is that where a father makes a gratuity to a child, he cannot afterwards convert it into a debt. So that the question for you to decide is, what did the father intend when he paid that note in bank? Did he intend it as a gift to his son William, or did he intend to hold it as a debt against him? That is the simple question of fact which you have to determine, and you determine that fact by the preponderance of the testimony.

On the part of William, it is contended that the evidence of Mr. Wallace, Mr. Goss, and Mr. Munro is conclusive of this. The day he paid the note he told Mr. Wallace, "I don't expect William to pay it." The same day he saw Mr. Goss, he said to him, "I don't intend to charge it to William." Then Mr. Munro administered on William's estate, and sold his personal estate at public outcry for the purpose of paying the debts due by that estate. He had various conversations with the old gentleman, and he never heard of that note, either from him or anybody else, until about the time suit was commenced. In addition to that Mrs. Fant says "that $1,993 was used for the purpose of buying me a home." Now, does that decide the case? Is it reasonable to suppose that the old gentleman, knowing that the money was intended for the purpose of buying the grand-daughter a shelter, a home, is it reasonable that he would have kept that note as a

debt against the father of this child? That is one question which you will ask yourselves when you come to consider it.

On the contrary, Mr. Foster had a conversation with the old gentleman about the time he paid this note, and he said he held the note of William Tucker, and intended to hold it against him until his estate was settled. That is the evidence of Mr. Foster, and it is upon that that you are to settle the conflict of testimony. So that when you come to consider the case, you will consider that this is a grandfather. Did he have any preference between his grandchildren, or did he only intend to equalize his estate between them? He gave to the children of his son William one-half of his estate, but he specified the realty, real estate, how that was to be divided. He gave the most valuable half of his real estate to his grandson, Epps. If he had it in his mind when he made that bequest, did he have it in his mind, "I have already given one of William's children $1,993 to buy her a home, and therefore I will give the most valuable part of my real estate to my grandson, Epps, in order to equalize him"? He made no distinction because there were three of William's and one of George's. His idea seems to have been to have made his will in favor of his grandchildren as a class. George had but one child, and William had four. But the one, if he equalized them, was entitled to George's share, and the other four to their father's share, William.

It is simply a question of fact, of which you are the sole judges. If he intended it as a gift, he could not make it a debt; and if he did give it, he can't take it back. So that you will determine that question, and as you determine it so will be your verdict. If he intended it as a gift, then your verdict will be for the defendant. If he did not intend it as a gift, but held it as a debt, then your verdict will be for the plaintiff, with interest from the date of the note.

*Messrs. I. G. McKissick* and *D. A. Townsend,* for appellant.

*Mr. William Munro,* contra.

March 7, 1889. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The plaintiff, appellant, as executor of James A. Tucker, deceased, brought the action below to recover the amount of a certain note given by his son, the respondent's intestate, to the said James A. Tucker for $1,993.-70, payable at the Merchants and Planters Bank of Union, and endorsed by the said James A. Tucker. The son died before the maturity of the note, and the father took it up from the bank, having it assigned to him. He subsequently died in possession of the note. The respondent administered upon the estate of the son, and had nearly completed his administration during the lifetime of the father without this note being brought to his notice. The father then died, leaving a will, of which the plaintiff, appellant, was appointed executor; and the action below was brought by the executor to recover the amount thereof. The defence set up was, that the payment of the note was intended as a gift or an advancement by the father to the son, and therefore never to be collected; and *plene administravit*, the respondent having settled the estate in the life-time of the father without any demand made by him upon the respondent.

The verdict was for the defendant, and this appeal involves the consideration of alleged errors to his honor, the Circuit Judge: 1st. In admitting certain testimony claimed by appellant to have been incompetent. 2nd. In excluding certain other testimony claimed to have been competent. And 3rd. To the charge, as invading the province of the jury, by charging upon the facts, in violation of the constitutional provision on that subject.

The exceptions on the ground of alleged incompetent testimony admitted, were as follows: 1st. "In allowing the witness Goss to detail a conversation with James A. Tucker tending to show what disposition the said James A. Tucker intended to make of his property, there being a will which alone could speak in that respect. 2nd. In allowing the witness, James Munro, who is the defendant in said case, to testify that James A. Tucker had knowledge of said witness's administration of W. J. Tucker's estate. 3rd. In allowing James Munro to testify that James A. Tucker never made any demand upon witness as administrator of W. J. Tucker for the debt involved in this action. 4th. In allowing James Munro to testify that he had conversations with

James A. Tucker in relation to the settlement of the estate of W. J. Tucker."

It appears that the witness Goss testified that he was near the bank when James A. Tucker paid off the note in question, and that after some short conversation, not material here, Tucker said to him, "That he had just paid off a note for his son at the bank, and that he never expected to call for that." Plaintiff's attorney objected on the ground that there was a will, and that it alone should speak as to the disposition of the testator's property. Defendant's attorney urged its competency, as a part of the transaction of payment—*res gestae*—and also that it was the purpose of the defence to show a gift, and if a gift, the testator could not dispose of that which he did not own. His honor ruled the testimony competent. We think the testimony was competent, as belonging to that class of declarations of parties not immediately before the court, styled admissions against interest. Here was a party who had just paid off a note upon another, his son, out of his own funds. Upon this payment he had the right to hold it for reimbursement, if he chose to do so, and he had the right also to hold it as a gift or advancement to his son ; and the declaration made to the witness was a statement of his intent, which was against his pecuniary interest.

And besides, the relation which Richards, the executor, in the action below, stood to Mr. Tucker, the testator, was that of privy by representation, which we think would also render the declarations of the testator of the character introduced competent. *Greenl. Evid.*, § 189. It did not appear that this testimony contradicted the will ; but even if it had, and if its provisions embraced a direct disposition of this note, we do not see how that fact could have excluded the evidence. The fact that a party has made a will disposing of certain property, could not preclude a claimant of said property from proving that the testator had acknowledged in his life-time that the property did not belong to him, but belonged to the claimant. The testimony may have been very weak in its tendency to prove a gift, but, as we have said, we think it was competent and admissible to the jury for what it was worth.

The testimony of James Munro, the defendant administrator,

was objected to under section 400 of the Code. Upon reading the testimony of Mr. Munro referred to, we do not think that the objection was tenable. The section of the Code relied on inhibits testimony by a party in interest of any conversation or transaction with a party deceased at the time of the trial. Mr. Munro, as it appears to us, did not undertake to detail any conversation or give an account of any transaction had by him with the deceased testator. He stated the fact that he had had repeated conversations with the testator, and in relation to the settlement of W. J. Tucker's estate, but he did not state what was said. He stated also that James A. Tucker had knowledge of his administration, and that he never had made demand upon him for this note; but this was not an infringement of the rule, as he neither testified to a conversation nor to any transaction.

The exceptions as to alleged competent testimony offered and refused by his honor are as follows: 1st. "In not admitting the testimony of John C. Richards as to the substance of conversations with James A. Tucker about the note and debt involved in this action. 2nd. In refusing to allow John C. Richards to testify as to whether James A. Tucker gave him any directions about said note."

To have admitted the testimony, the refusal of which is the foundation to the first exception above, would clearly have violated section 400 of the Code, as its purpose was to give the substance of a conversation between the witness, a party to the action, and James A. Tucker, deceased, in reference to a matter at issue in the suit, the very kind of testimony which the section expressly inhibits.

As to the 2nd exception above, we do not find that his honor ruled that it was incompetent for the witness to state that he had a conversation with Mr. Tucker as to this note, but he ruled that what was said was incompetent. (See folio 60 of the reported testimony.[1]) He was subsequently asked by plaintiff's attorney,

---

[1] The reported testimony at folio 60 is as follows:

J. C. Richards, the plaintiff, while on the stand, was being examined in chief by his counsel, Mr. Townsend.

Q. Mr. Tucker knew that you were executor, of course? A. Yes, sir.

Q. Did he speak to you about it before he died? A. Yes, sir.

if he had any directions given him about this note, as to what to do with it. This was excluded. As this was a question calling for the statement of a fact merely, and not involving what the directions, if any, were, it might have been admitted in so far as section 400 is concerned, but it could not have been followed up by a call for the directions. It was therefore irrelevant, as not bearing on the matters in issue, and its exclusion was harmless.

As to the exception alleging error to his honor's charge, as violative of the constitutional inhibition in reference to charging on the facts. The rule as laid down by this court in several cases on this subject is, that this constitutional provision is violated where the. trial judge allows his opinion to reach the jury by his charge upon any contested point in the case, whether un-

---

Mr. Munro objects.

Q. How far did you live from Mr. Tucker? A. About 300 or 400 yards. Q. Visit him often? A. Yes, sir. Q. Have a knowledge of his business generally? A. Yes, sir; a good deal. Q. Did you have a conversation with him in reference to this note?

Mr. Munro objects. We insist a declaration made in that way cannot be introduced.

The Court: The fact that he had a conversation in his presence is admissible.

Mr. Townsend: Q. Did you have a conversation? A. Yes, sir. Q. About this note? A. Yes, sir. Q. What was the conversation?

Mr. Munro objects.

The Court: I rule that out.

Mr. Townsend: Do you know it was not a gift to W. J. Tucker's estate? The Court: That would be the same thing.

Mr. Munro objects.

Mr. Townsend: He may know otherwise. I ask this witness if he knows that that was not a gift to W. J. Tucker's estate.

Mr. Munro objects.

The Court: I don't think it is a question that is admissible.

Mr. Townsend excepts.

Q. Did Jas. A. Tucker before his death give you any directions about this note, as to what to do with it?

The Court: Oh, no; that is the same thing in a different form.

Q. I asked him in the other case what the conversation was. I ask him in this case if he had any directions given him.

Mr. Munro: He can't testify to any communication with him by the deceased.

The Court: That is the same thing as the conversation.

intentionally or otherwise. It is the exclusive province of the jury to determine the truth of the facts alleged and at issue, and they must be left to do so, without any expression or indication of opinion on the part of the judge. Now, we have read the charge of his honor here under the light of this rule, and when read as a whole, as it was delivered, we cannot say that the rule was violated. His honor stated what had been testified to on both sides, and presented the questions to be considered by the jury, and referred to the evidence which if believed might bear upon these questions; but we do not find that he either indicated his opinion as to the truth of the testimony, or as to what the verdict should be. On the contrary, he distinctly stated that it was a question of fact, of which the jury were the sole judges, and as they determined, so should be their verdict.

Nothing was said in the argument as to the impanelling of the jury. We suppose that it was abandoned; but in any event we see no ground for a new trial on that account.[1]

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.

[1] The point here referred to is that raised by the 10th exception, which was as follows: "For that the jury was illegally impanelled, for the reason that the plaintiff was required by his honor, the presiding judge, after objections on the part of the plaintiff, to make both his peremptory challenges in succession, instead of making them alternately with the defendant, as required by law."

Upon this point, nothing appears in the Brief; and in the argument submitted by appellant it is said: "The 10th exception was rendered of no avail in settling the case by his honor."—REPORTER.