## GRIFFIN v. EARLE.

1. INTERESTED WITNESS—PARTY DECEASED.—Where a married woman is sued upon her bond and mortgage by the assignee of the executors of the mortgagee, her husband may testify to communications had between himself and the mortgagee at the time the debt was contracted, as to whether the loan was made for his own uses or for the use of his wife's separate estate, his interest in the event of the action (if any such as the law contemplates) being equally balanced.

2. IBID.—IBID.—Whether a liability to the mortgagee fixed upon the husband by his own testimony, is barred by the statute of limitations, is an incidental question which cannot be considered in determining whether he is interested in the event of this action.

3. EVIDENCE—PARTY DECEASED.—In action by the assignee of a mortgagee, the mortgagor may testify that she never had any communication or transaction with the mortgagee, now deceased.

4. EVIDENCE.—In action of foreclosure against a married woman, testimony by a witness of what the husband said at the time the mortgage was given, his wife not being present, was clearly incompetent, the husband not being his wife's agent.

5. FINDINGS OF FACT by the Circuit Judge, in an equity case, from written testimony submitted to him, approved.

6. MARRIED WOMAN'S CONTRACTS.—A bond and mortgage given by a married woman in 1884 to secure the repayment of money borrowed by her husband and used by him in his business as a merchant, is an absolute nullity as to her.

7. IBID.—LACHES—ESTOPPEL.—A married woman gave her bond secured by a mortgage of her separate property to raise money for her husband's use, without any representation by her that she was borrowing for herself. Afterwards the mortgagee died, and his executors assigned these papers, without any representations by the mortgagor and even without her knowledge, so far as appears. When this assignee attempted five years afterwards to enforce payment by sale under a power contained in the mortgage, the mortgagor brought action to enjoin and cancel. *Held*, that she was not estopped nor chargeable with *laches*.

8. VOID MORTGAGE—JURISDICTION OF EQUITY.—Whether the Court of Equity has jurisdiction to enjoin a sale under a void mortgage, raised but not considered.

Before WALLACE, J., Richland, April, 1890.

Action by Emma Griffin against Caroline E. Earle to have

plaintiff's mortgage cancelled, and to enjoin defendant from selling thereunder. The Circuit decree was as follows:

On hearing the complaint and answer, the master's report of testimony, and the arguments of counsel, I find as matters of fact:

1. That on February 21, 1884, at Columbia, South Carolina, Benjamin F. Griffin borrowed from S. L. Leaphart the sum of two thousand dollars, for the purposes of his business as a merchant, and not in any wise as agent of the plaintiff, and afterwards expended the same therefor.

2. That on the same day, to secure payment of the said loan, the plaintiff, Emma Griffin, then and now the wife of said Benjamin F. Griffin, executed her bond to the said S. L. Leaphart, of that date, in the penal sum of $4,000, conditioned for the payment of two thousand dollars, with interest thereon from date at the rate of ten per cent. per annum; and on the same day, to secure payment of said bond, she executed her deed, by way of mortgage, to said S. L. Leaphart, of a certain lot of land in Columbia aforesaid, on the northwest corner of the intersection of Richardson and Pendleton streets, containing one half acre, more or less, bounded on the south by Pendleton street, on the east by Richardson street, on the north and west by lot of B. F. Griffin, said lot being her separate property.

3. That the defendant, Caroline L. Earle, assignee of said bond and mortgage, by virtue of a power contained in the said mortgage, threatened to sell and convey said lot for the satisfaction of said bond and mortgage, and thereby bar and foreclose the plaintiff from all right, title, interest and estate in and to the said premises; and to that end, by publication in the Daily Register newspaper in the said city, of date April 12, 1889, advertised a sale of the said lot under the said power at auction for sale.

4. That said loan was not made to the plaintiff, or for the benefit of her separate estate; that the proceeds thereof were not expended, in whole or in part, for the same; that the debt evidenced by the bond and mortgage, and said bond and mortgage, were not contracted as to the separate property of the plaintiff.

I find as matter of law: 1. That the said bond and mortgage are null and void. 2. That the plaintiff is entitled to the relief demanded.

It is therefore ordered, adjudged, and decreed, that the said bond and mortgage are null and void, and that the defendant, her servants, attorneys, agents, and assigns, be perpetually enjoined from selling, conveying, or in any manner disposing of, or interfering with, the said premises; and that the defendant do deliver up the said bond and mortgage to the master for Richland County, to be by him cancelled; that the said master do cancel the same, and that the register of mesne conveyance for said county do write a copy of said cancellation on the record of said mortgage in the said registry.

3. That the costs of the proceedings herein be taxed by the master against the defendant, and that plaintiff have leave to issue execution therefor.

Defendant appealed.

*Messrs. Lyles & Haynsworth,* for appellant.

*Messrs. Melton & Melton* and *Bachman & Youmans,* contra. Upon the law affecting the contracts of married women, their argument was as follows:

The general rule is that a married woman is incapable of contract; and in order to enforce contract against her, the burden of proof is upon the other contracting party, to show that the contract was made "as to her separate estate." This is the rule established in *Habenicht* v. *Rawls*, 24 S. C., 461, the leading case; constantly and consistently adhered to in the many subsequent cases. It is expressed in these words:

"The contract which a married woman is authorized to make is as to her separate property; must have reference to her separate property; must concern her separate property. * * * Before a married woman can be made liable for a breach of contract alleged to have been made by her, it must be made to appear either from the inherent nature of the contract or otherwise that the contract was made in relation to or concerned her separate property."

The burden of proof is upon the party who seeks to establish the validity of the contract; the fact must clearly appear, by the

preponderance of the evidence, that it was made with reference to the separate estate; for the "benefit," or, rather, for the uses and purposes of the separate estate. It must concern the separate property. *Habenicht* v. *Rawls; Brown* v. *Thomson*, 31 S. C., 436; *Chambers* v. *Bookman*, 32 S. C., 455.

In one sense a mortgage, intended to create a lien upon the separate estate, is made "as to the separate property;" but this is not the sense of the statute. As a contract, it must be subjected to the rule of the leading case: that is to say, the debt to be secured must have reference to, concern, and be for, the uses and purposes of the separate estate. *Aultman* v. *Rush*, 26 S. C., 517; *Gwynn* v. *Gwynn*, 27 S. C., 525; *Brown* v. *Prevost*, 28 S. C., 123; *Aultman* v. *Gibert, Ib.*, 303; *Fant* v. *Brown*, 29 S. C., 598; *Tribble* v. *Poore*, 30 S. C., 97; *Taylor* v. *Barker, Ib.*, 238; *Erwin* v. *Lowry*, 31 S. C., 330; *Building and Loan Association* v. *Jones*, 32 S. C., 308; *Wallace* v. *Carter, Ib.*, 314; *Chambers* v. *Bookman, Ib.*, 455; *Goodgion* v. *Vaughn, Ib.*, 499; *Salinas* v. *Turner*, 33 S. C., 231. The last case cited is directly in point—"on all fours" with our case.

A married woman has power to purchase property and she may borrow money; but to the validity of a mortgage made to secure a debt thereby created, it must appear that the contract was made for her separate estate—"as to her separate property," in the sense of the rule. The loan must be for her own use; the purchase must concern, must be for the purposes of, her separate estate. *Aultman* v. *Gibert*, 28 S. C., 303; *Dial* v. *Agnew*, 28 S. C., 454; *Howard* v. *Kitchens*, 31 S. C., 490; *Goodgion* v. *Vaughn*, 32 S. C., 499; *Hogan* v. *Hoover*, 33 *Id.*, 219.

In accordance with a familiar doctrine of equity, where a married woman has made representations to the other contracting party that the contract of loan or purchase is for her own use, or the use of her separate estate, she is estopped from denying the truth of her statement. "It would operate as a fraud to allow her afterwards to dispute such a representation of *fact*." The essence of the doctrine, however, is *deceit;* and when the truth was known to the other party, at the time of the contract, and he was not misled, the estoppel will not operate. To apply the rule: it may be true that the loan was intended for the use of the hus-

band, but if the lender was ignorant of the fact, and the wife or her agent represented to him that the loan was for her use, she will be held liable upon her mortgage, although the money was in fact immediately applied solely to the purposes of the husband. Here the burden of proof shifts; and she must make it appear that the lender knew that the representations were not true. But when such representations are made by an agent, the authority of the person making them must clearly appear. *Greig* v. *Smith*, 29 S. C., 426; *Tribble* v. *Poore*, 30 S. C., 97; *McCord* v. *Blackwell*, 31 S. C., 125; *Erwin* v. *Lowry, Ib.*, 330; *Brown* v. *Thomson, Ib.*, 436; *Howard* v. *Kitchens, Ib.*, 490; *Schmidt* v. *Dean, Ib.*, 498; *Law* v. *Lipscomb, Ib.*, 504; *Building and Loan Association* v. *Jones*, 32 S. C., 308; *Wallace* v. *Carter, Ib.*, 314; *Goodgion* v. *Vaughn, Ib.*, 499.

July 28, 1891.   The opinion of the court was delivered by

MR. JUSTICE MCIVER.   On the 20th of February, 1884, Emma Griffin, then being the wife of B. F. Griffin, made and executed a bond, secured by a mortgage on her house and lot in the city of Columbia, payable to S. L. Leaphart, which bond and mortgage was duly assigned by the executors of Leaphart, who had died in the meantime, to the defendant.   On the 12th of April, 1889, the assignee, Mrs. Earle, under a power contained in the mortgage, advertised the mortgaged premises for sale, whereupon this action was commenced to enjoin the sale and to have said bond and mortgage declared null and void, upon the ground that plaintiff, being a married woman at the time, had no power to make the contract evidenced by the bond and mortgage, alleging that the contract was not in reference to her separate estate, but that the same was to secure the repayment of money borrowed from Leaphart by her husband for his own use, and so applied by him.

B. F. Griffin, the husband, was called as a witness for plaintiff, and when asked to state the transaction between himself and Leaphart, objection was interposed upon the ground that such testimony was incompetent under section 400 of the Code.   The objection was overruled, and this ruling constitutes the basis of the first ground of appeal.   When the plaintiff was examined as

a witness, and asked whether she had ever had any conversation or transaction with Leaphart in regard to the loan of this money, objection was interposed upon a similar ground; and this objection being overruled, such ruling constitutes the basis of the second ground of appeal. The defendant offered to prove, by the testimony of Col. John T. Sloan, jr., what passed between himself, as the attorney of Leaphart, and B. F. Griffin when the loan was negotiated, which, upon objection being interposed by plaintiff, was ruled to be inadmissible, and this is the basis of the third ground of appeal.

The case was heard by his honor, Judge Wallace, who, amongst other things, found as matter of fact that B. F. Griffin borrowed from Leaphart the money which the bond and mortgage purports to secure, "for the purposes of his own business as a merchant, and not in any wise as agent of the plaintiff, and afterwards expended the same therefor;" and further, "that said loan was not made for the benefit of her separate estate; that the proceeds thereof were not expended, in whole or in part, for the same; that the debt evidenced by the bond and mortgage, and said bond and mortgage, were not contracted as to the separate property of the plaintiff." As matter of law he found that the bond and mortgage were null and void, and that plaintiff is entitled to the relief demanded.

Judgment having been rendered in accordance with these findings, the defendant appeals upon the several grounds set out in the record. The first, second, and third grounds have already been sufficiently indicated. The fourth and fifth raise only a question of fact, as to whether the Circuit Judge erred in his finding that the money was borrowed by B. F. Griffin for his own use, and that his wife had nothing to do with the loan or use of the money. The sixth ground is general in its character, and simply imputed error to the finding that plaintiff was entitled to the relief demanded. The seventh and eighth grounds allege error in not finding that the action was barred by the *laches* of the plaintiff, and that she was estopped.

The plaintiff having died pending this appeal, the action has been continued in the name of W. H. Griffin as her administrator, by a proper order to that effect.

The first ground of appeal cannot be sustained. As was said in *Boykin* v. *Watts* (6 S. C., at page 82), and quoted with approval in *Robinson* v. *Robinson* (20 *Id.*, 572), in speaking of the proviso to section 400 of the Code : "The obvious purpose and intent of the proviso * * * is to exclude the evidence by a party interested in the event of a suit, of any transaction or communication with a deceased, by which such event may be determined in favor of such witness." To same effect see *Moffatt* v. *Hardin*, 22 S. C., 25. B. F. Griffin not being a party to the action, his testimony as to conversations and transactions with Leaphart could be excluded only upon the ground that he had some "legal or equitable interest which may be affected by the event of the action or proceeding," or because his "examination or any judgment or determination in such action" could "in any manner" affect his interest, which the cases above cited show means be calculated to promote his interest. Now, even if it be conceded that B. F. Griffin had such a legal or equitable interest as is contemplated by the statute (which, however, we are not to be understood as saying, except for the purposes of this case), we do not see how his testimony could possibly promote his interest, which, if he had any, was equally balanced. For if, by his testimony, the plaintiff would be relieved from liability on the bond, then B. F. Griffin would be clearly liable to Leaphart for the money which he got from him and used for his own purposes.

The suggestion that the statute of limitations would protect him from such liability will not avail ; for, as was said in *Roe* v. *Harrison*, 9 S. C., 280, "a question of fact * * * could not be determined as an incident merely to the question of the interest of the witness in the event of the suit. Such a proceeding would be without precedent and incompatible with orderly procedure in trials of issues of fact, and it is not to be assumed that the legislature intended such a qualification of its language." It would therefore have been "incompatible with orderly procedure," for the court to have turned aside from the issues of the case on trial, for the purpose of determining whether the statute of limitations would have protected B. F. Griffin from liability to Leaphart, or whether the plea of the statute could not

have been successfully met by proof of subsequent acknowledgments, or otherwise, before it could determine what interest B. F. Griffin may have had in the event of the suit.    On the other hand, if the liability of the plaintiff to Leaphart could be fixed, then B. F. Griffin would be liable to the plaintiff for having used her money.    It seems to us clear that there was no error in admitting the testimony of B. F. Griffin as to his conversations and transactions with Leaphart.

The second ground is equally untenable.    The plaintiff was not called upon to testify, nor did she testify, to any conversation or transaction with Leaphart.    She simply said that she never had any communication or transaction with Leaphart, and this was clearly competent under the cases of *Brown* v. *Moore*, 26 S. C., 163, and *Richards* v. *Munro*, 30 *Id.*, 284, cited by counsel for respondent.

As to the third ground, there can be no doubt that Sloan's testimony as to what passed between him and B. F. Griffin was clearly incompetent as mere hearsay evidence, unless it had been shown that B. F. Griffin was acting as the agent of the plaintiff, which was not only not shown, but the contrary was abundantly proved.

The fourth and fifth grounds raise simply a question of fact as to who borrowed the money from Leaphart, and as the conclusion reached by the Circuit Judge is fully sustained by the evidence, these grounds need not be further considered.

In view of these findings of fact, there can be no doubt that there was no error on the part of the Circuit Judge in holding that the bond of a married woman, not given with reference to, or for the benefit of, her separate estate, but, on the contrary, to secure the repayment of money borrowed by her husband and used for his own purposes, was an absolute nullity, on the ground that, under the law as it stood at the making of the bond, a married woman had no power to enter into such a contract.    In view of the cases which have recently been decided by this court in reference to the powers of a married woman to contract, it surely cannot be necessary to enter again

into the discussion. The cases may be found extremely well classified in the argument of respondent's counsel.

It remains only to consider the question of *laches* and estoppel raised by the seventh and eighth grounds of appeal. So far as we can discover, there is nothing whatever in the case on which the charge of *laches* can be based. The bond was given in 1884, but it does not appear when it was transferred to the defendant. There is no evidence tending to show that the plaintiff ever did or said anything to induce the defendant to take an assignment of the bond. Indeed, it does not appear that plaintiff ever even knew that defendant held the bond until the advertisement of the sale, and this action was brought very soon afterwards. As to the estoppel, we can discover nothing in the testimony to support it. There is no evidence that the plaintiff ever represented to Leaphart or to the defendant that the money was borrowed for her own use, and nothing whatever to induce the defendant to suppose that such was the fact.

It may be as well for us to add that we do not understand that the question of jurisdiction, as it is termed, that is, the right of the court to grant the relief demanded in case the conclusion was reached that the plaintiff was not liable on the bond and mortgage, as being made in this case, and therefore that question has not been considered. It is not raised by any exception, nor does it appear that the Circuit Judge made, or was requested so make, any ruling upon the subject. It is not presented in the argument of appellant, and, on the contrary, it is stated in respondent's argument that the jurisdiction was conceded by defendant. Under these circumstances we have not felt at liberty to consider it; and do not desire to be regarded as intimating any opinion, either one way or the other, as to that question.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.