STATE, Respondent, vs. BURNS, Appellant.

*December 6, 1940—February 4, 1941.*

*Franklin E. Fogo,* attorney, and *Van R. Coppernoll* of counsel, both of Richland Center, for the appellant.

For the respondent there were briefs by the *Attorney General, William A. Platz,* assistant attorney general, and *Sidney J. Hanson,* district attorney of Richland county, and oral argument by *Mr. Hanson* and *Mr. Platz.*

WICKHEM, J. The first question raised upon this appeal is whether the evidence was sufficient to sustain a verdict of guilty. Defendant was treasurer of school district No. 3, commonly known as the Ferguson district, town of Akan, Richland county, from July 1, 1929, to July, 1938. On the latter date Alma Adney succeeded the defendant in office. An examination of the books of defendant showed that on June 6, 1933, the school district borrowed the sum of $400 from the Farmers & Merchants Bank of Richland Center. This note was renewed several times and ultimately paid by the school district on March 15, 1934. Outside of another loan from the same bank on December 18, 1937, in the amount of $200, this was the only loan of which there was any record in the school treasurer's books during his tenure. In his books for 1933, defendant listed the $400 loan as money received, and as of June 11, 1933, under order No. 24, he listed as an expenditure payment of a note of $400 with no statement of its payee or purpose. There is no corresponding order in the clerk's order book, and with this amount unaccounted for, the books of defendant are $400 short. There is also an item of $23.43, March 18, 1932, which defendant had received on behalf of the district as a dividend from a defunct bank at Soldiers Grove. The treasurer's books do not show the receipt of this item. The books of the treasurer for the year 1933 show re-

ceipts of $2,094.05, and expenditures of $1,840.36, leaving a balance on hand of $253.69. The annual report of the clerk shows receipts of $1,604.05, payments of $1,440.36, and the same balance on hand shown by the treasurer, but this report lists neither the receipt of $400 as a result of the loan nor the expenditure of $400 in payment of the note. The explanation of the shortage by defendant is that at the school meeting in July, 1932, it was voted to spend from $300 to $350 to put a basement under half the schoolhouse but that when the contract was let to do the work the school board contracted to have more work done than this sum would pay for. Defendant claims that the school board then let the contract to one Townsend to do the work for $532; that Townsend did some extra work and was paid over $700 in all for the work that he did; and that during the time that this work was being done defendant advanced about $400 of his own money to pay for the work; that he made a promissory note of the district payable to him in order to evidence and account for these advances; that at the school meeting in July, 1933, he explained fully what he had done in respect to advancing the money. On June 6, 1933, the district executed a note to the Farmers & Merchants Bank of Richland Center for $400, and over a period of three or four months thereafter defendant reimbursed himself according to his claim for the advances made. While the minutes of that meeting showed that the treasurer's report was read and approved, there is no record as to what the report was. Defendant claims to have filed a special memorandum and record of his advancements with other papers, but to have burned these in July, 1933, in accordance with the custom of the district after full disclosure and approval of his report. Defendant's explanation of the disposition of the $23.43 is that he furnished wood for the schoolhouse during the winter of 1932 and 1933, and in support of this points out that there is no evidence that wood was obtained elsewhere or otherwise paid for during that year.

Other members of the board at the time of the events in question deny that any claim was made by defendant of the sort that he now puts forth as his defense, or any disclosure made that he had advanced sums to the district and subsequently reimbursed himself. With reference to the contract with Townsend on which defendant claims to have paid out $400, it appears that out of $753 that the job cost, $353.10 was paid directly to Townsend by orders duly signed by the clerk and that three other orders applicable to the same job and bringing the total up to $652.46 were paid out during the same year. The largest of these items was $280.66 to the Nuzum Lumber Company. This total corresponds with the cost of the improvement as reported to the county superintendent in the annual report of the district ending June 30, 1933. Accepting defendant's statement that the job was to cost $753, there is hardly more than $100 between what is recorded as spent and that figure. Townsend claims that he had about $400 coming after the $353 was paid, but this is denied by other members of the board, and the clerk of the board testified that when he gave Townsend the last order of $153.10, it was understood to be in full payment of Townsend's services. It is argued and certainly is a permissible inference that this is substantiated by the odd amount of the check in contrast to the even sums paid on account. There is evidence of a statement out of court by Townsend that he never received any money except upon order. Another fact that is open to an inference adverse to defendant's position is that there is some evidence that the school district had sufficient balances during the period to make unnecessary any such irregular arrangement as defendant testifies to. On the other hand, it is clear that the note to the bank on June 6, 1933, was duly executed, which appears to indicate some need for funds.

While the evidence falls short of a demonstration of guilt or innocence, we conclude that there was a jury question. However, for several reasons we think that a new trial should

be granted in the interest of justice. The transactions upon which the prosecution is based are stale, so much so in fact that it is a serious question whether, if the matter had been litigated upon the trial, the statute of limitations would not have been a good defense. In addition to this, the slipshod, informal and irregular method of transacting and recording the business of the district renders the proof somewhat unsatisfactory and causes us considerable misgivings whether justice has been done.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial.