STATE, Respondent, vs. DAVIDSON, Appellant.

*January 15—March 9, 1943.*

For the appellant there were briefs by *Hill, Beckwith & Harrington* of Madison, and oral argument by *John T. Harrington.*

For the respondent there were briefs by the *Attorney General, William A. Platz,* assistant attorney general, and *Norris E. Maloney,* district attorney of Dane county, and oral argument by *Mr. Maloney* and *Mr. Platz.*

WICKHEM, J.  Defendant was superintendent of the Dane county asylum from 1929 to November 30, 1941.  In 1941 an investigation of the affairs of the institution was made by

a committee of the Dane county board. This included an audit which reflected the accounts as of August 31, 1941. As a result of the audit and investigation, the district attorney filed an information charging embezzlement and false entries in nine counts. Each false-entry count relates to a transaction out of which a charge of embezzlement is made.

The first contention of defendant is that the prosecution is barred by the operation of sec. 325.24, Stats., and that the trial court erred in sustaining a demurrer to a plea in bar based upon this contention. The plea in bar alleged that a committee of the Dane county board, empowered by secs. 325.01 (3) and 325.12 to subpœna and swear witnesses and to take testimony under oath, undertook to make a complete investigation of the Dane county home and asylum; that on August 28, 1941, the committee subpœnaed and had served upon defendant a subpœna *duces tecum;* that in response to this subpœna defendant appeared at various hearings of the committee under compulsion of the subpœnas and testified under oath, and thereby became entitled to immunity under sec. 325.24. Sec. 325.24 reads as follows:

"No witness or party in an action brought upon the bond of a public officer, or in an action by the state or any municipality to recover public money received by or deposited with the defendant, or in any action, proceeding or examination, instituted by or in behalf of the state or any municipality, involving the official conduct of any officer thereof, shall be excused from testifying on the ground that his testimony may expose him to prosecution for any crime, misdemeanor or forfeiture. But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may testify, or produce evidence, documentary or otherwise, in such action, proceeding or examination, except a prosecution for perjury committed in giving such testimony."

The precise question upon this appeal is whether, in order to put into operation the provisions of sec. 325.24, Stats.,

defendant must have claimed his constitutional privilege before testifying at this investigation. Defendant contends that an assertion of the privilege is not a condition to immunity and this position is ably defended by his counsel. The contention must be rejected. The question has been deliberately and considerately answered in this state adversely to defendant. The construction urged by defendant was sustained by a divided court in *State v. Murphy,* 128 Wis. 201, 107 N. W. 470. In *Carchidi v. State,* 187 Wis. 438, 204 N. W. 473; *State v. Grosnickle,* 189 Wis. 17, 206 N. W. 895; and *Ciolocomio v. State,* 198 Wis. 18, 222 N. W. 825, the *Murphy Case* was expressly and emphatically overruled. The *Murphy Case* had taken the position that the statute and its terms impose no conditions upon the immunity conferred and assure to any person who may testify complete immunity upon a later prosecution arising out of the transactions or facts testified to. The later cases hold that the intent of the legislature in sec. 325.24 is merely to create an immunity coextensive with the constitutional privilege against self incrimination, and that so considered, the statute requires a claim of the privilege as a condition to immunity.

No claim is made, nor could any be successfully defended, that sec. 325.24, Stats., as construed in the *Carchidi, Grosnickle,* and *Ciolocomio Cases, supra,* does not completely preserve the constitutional privilege and we meet here only a question as to the proper construction of the section. We see nothing unsound about the rule established by the later cases and this construction of sec. 325.24 has survived numerous sessions of the legislature. We think it should not be departed from.

We are cited to a very recent case in the United States supreme court, *United States v. Monia,* 317 U. S. 424, 63 Sup. Ct. 409, 87 L. Ed. 000. We deem it unnecessary to enter into an elaborate consideration of this case, since it involved no constitutional point and simply construes a federal statute.

The statute is somewhat different in wording from sec. 325.24, Stats., but we shall not consider whether this makes the case distinguishable in any respect. The most that can be claimed for the case, if that much can be claimed, is that a majority of the United States supreme court has adopted a construction of the federal statute different from that adopted by this court in respect of a similar statute of this state. This court is not bound by the federal decision, and while we should, and do treat the pronouncements of the supreme court with the greatest deference, that circumstance is not enough to warrant departing from our own well-established rule. We consider that the plea in bar was properly overruled.

It is next contended that the evidence does not sustain the conviction. This is based upon the claim, (1) that there is no proof beyond a reasonable doubt that defendant was guilty of a conversion; and (2) that as a matter of law, assuming a conversion, there is reasonable doubt whether defendant entertained the intent requisite to sustain conviction of the felony of embezzlement. A brief review of the facts is necessary and a more detailed review would contribute to confusion rather than to clarity.

Defendant became superintendent of the asylum in 1929 and his service was terminated on November 30, 1941. His system of handling funds of the asylum was as follows: Receipts of funds belonging to the asylum were entered in a cash-receipts book. The receipts were then deposited in the Bank of Verona in a personal account referred to by the parties on this appeal as the "dual" account. Defendant deposited both personal and county funds in this account. Withdrawals from this account were with one exception made by checks merely signed "W. L. Davidson." At the start there was also money in this account in the sum of $488.06 which was a petty-cash fund and checks on this fund were signed "W. L. Davidson, Superintendent." For all checks drawn to defray expenses of the asylum a voucher was prepared at

the end of the month, submitted to the board of trustees and approved by them. Thereupon, the county treasurer reimbursed defendant to the extent of the voucher. In February of 1936 a contingent fund of $1,000 was established to defray current expenses. This was carried in a separate account called the "Dane County Asylum Account." Defendant drew upon this account without countersignature or authorization. This account constituted a revolving fund. Checks were drawn upon the account to defray asylum bills, and at the end of the month a voucher for these disbursements was submitted to the asylum trustees for approval and a reimbursement check ultimately issued by the county treasurer. The deposit of this check restored the account to its original amount. The only deposits in the contingent fund were these reimbursing checks, all receipts for the account of the asylum being customarily deposited in the dual account. It was defendant's practice, at the end of each month, to total the cash-receipts book and make remittance of the total receipts to the county treasurer. He also prepared a voucher of disbursements made for county purposes during the month, submitted it to the trustees for approval, and received a county reimbursing check which he deposited in the dual account. It is conceded that substantially all receipts of county funds by defendant were actually deposited in the dual account, including the money alleged in this case to have been embezzled.

The principal foundation for the embezzlement and false-entry charges was that there were numerous failures upon the part of the defendant to enter receipts in the cashbook, resulting in a shortage in the funds transmitted to the county at the end of the month in which such omissions occurred. There was also a constant use of such portions of the dual account as defendant considered his own personal funds for his own benefit, and hence the failure properly to enter these sums in the cashbook would result in a conversion of such sums as were not included because these sums would not be

transmitted to the county and would be checked out for defendant's own benefit.

We do not deem it necessary to review all of the items which defendant concededly did not enter in his cashbook. It suffices to state that according to the testimony of the accountant, who audited the books, these sums so far as applicable to the five counts of embezzlement amounted to $601.91 and that the gross total of all cash deficiencies chargeable to defendant from the commencement to the termination of his services was $1,460.97. There was, however, an overrun in the contingent fund of $548.57 which, it appears to be conceded, belonged to defendant. The difference between these two sums is $912.40 which includes, of course, items other than those charged in the information. It should also be stated that the audit disclosed errors prejudicial to defendant, as well as to the county.

We are of the view that there was evidence to sustain a finding that defendant was guilty of conversion. All receipts of the county were deposited in defendant's personal account at the bank. No matter what this account may be called upon this appeal, it was his own account, and he did intermingle the funds of the county with his own funds. That in itself is a conversion. In this connection, see *State v. Kuenzli,* 208 Wis. 340, 346, 242 N. W. 147, in which this court said:

"The deposit of the client's money in his own account, the drawing out of all the funds in defendant's account, or the neglect of the defendant to pay the money to his client upon demand, were all capable of supporting a charge of embezzlement, providing they were characterized by the requisite intent."

It appears to us that depositing funds of the county in his own account and through the process of incorrect entries in his cash-receipts book, failing to turn them over to the county at the time when he was obligated to do so, is sufficient evi-

dence of conversion. Defendant, it is true, presented the analysis of a competent auditor which consisted in an examination of each item of the dual account, and is asserted to show that at no time did defendant's personal withdrawals exceed his equity in the fund. There are two observations to be made concerning this analysis: The first is that it was based upon information given to the accountant by defendant as to which of the various items of deposit or withdrawal were personal, and which involved county funds. For this reason, the jury was not required to believe or accept the foundation of the analysis. The second observation is that a conversion is sufficiently proved by showing that the money was deposited in defendant's personal account, intermingled with his funds or not turned over to the county in accordance with his obligation so to do.

It is next claimed that there is no evidence of intent to embezzle. As in all of these cases, the question of intent furnishes the greatest difficulty. It was said in the *Kuenzli Case, supra,* with respect to the conversion of client's funds by a lawyer (p. 346):

"The evidence is undisputed that defendant deposited the money in his own account, and that he thereafter used the money for his own benefit. It is true that whether these acts on the part of the defendant constituted mere conversion or embezzlement depends upon the intent with which they were done. However, intent is a state of mind which can be evidenced only by the words or conduct of the person who is claimed to have entertained it. The jury was under no obligation to accept the direct evidence of intent furnished by the defendant, and must be permitted to infer intent from such of defendant's acts as objectively evidence his state of mind. It seems clear to us that the deposit and subsequent use of the funds by defendant for his own benefit may properly form the basis for an inference of felonious intent."

We think that the jury was entitled to believe that by reason of false entries in the cashbook there was a failure to account

for county funds and a use of them for defendant's benefit. Out of this alone, an inference of felonious intent could be drawn. However, there are other circumstances in this case which considered independently tend to sustain the jury's conclusions as to defendant's intent. On June 2, 1937, a check was issued to defendant as superintendent in the sum of $170 for three bulls sold by the asylum. This check was indorsed and deposited, but not entered into the cashbook until after the investigation into the affairs of the asylum. ·An item of $309 on May 8, 1935, for the sale of cattle condemned as Bang's disease reactors was received by defendant, deposited in the dual account in the Bank of Verona but omitted from the notebook which was used to record sales and replacement purchases as a result of the Bang's disease tests. This omission resulted in an understatement of the balance due the county on Bang's disease transactions. The foregoing items are covered by counts in the information and involve total failure to enter large items in the cashbook.

There was also another group of omissions, all of which are significant, but none of which, so far as we can determine, are involved in the counts. On March 12, 1932, a receipt of $338.43 was included in the cashbook as $276.15. On May 3, 1933, a receipt of $555.81 was entered in the cashbook as $455.81. On May 10, 1933, an item of $307.90 was entered in the cashbook as $207.90. On September 8, 1934, a receipt of $276.96 was entered as $76.96. We have selected the most striking items and eliminated some smaller items which are not open to as strong an inference. The jury was entitled to conclude that the omission to enter such large items as are heretofore mentioned, especially in months when the number of items was not large, as well as the great disparity in some of these transactions between actual receipts and the amounts entered in the cashbook, showed beyond reasonable doubt, an intention to falsify the books and to embezzle the sums of money omitted from the cashbook. The inevitable conse-

quence of failing to enter these items in the cashbook would be a failure to account, and while the claim is made that examination of the whole period discloses nothing but a poor system of bookkeeping, plus a poor bookkeeper, a jury was entitled to reject this explanation in favor of a more serious one. Defendant was a poor bookkeeper, and to put it mildly, the general scheme of handling county funds left much to be desired. However, no bookkeeping scheme will work if entries are omitted from the books, and no great bookkeeping skill is required to make an accurate entry in some such book. From the evidence, the jury could conclude that the difficulty was not the result of carelessness or unskilfulness.

It is pretty clear to us that assuming that a felonious intent is necessary on the false-entry counts, it is furnished by the same evidence that sustains the embezzlement counts. Hence, we are not disposed to enter into a discussion of the state's claim that such cases as *State v. Bennett,* 213 Wis. 456, 252 N. W. 298, and *State ex rel. Dinneen v. Larson,* 231 Wis. 207, 284 N. W. 21, 286 N. W. 41, make it unnecessary to find corruption or fraudulent intent in order to support a count of malfeasance in office. However that contention might be disposed of, the result of this case would not be changed, since we hold that the evidence warranted a finding of felonious intent. We do not consider that this case is comparable to *State v. Burns,* 236 Wis. 593, 296 N. W. 85. There the difficulty was in the manner of keeping books. Here, there was a complete failure to enter some receipts and an incorrect entry of others. This could only be carelessness or dishonesty. It had nothing to do with the system of accounting. The items were large enough to warrant a jury in discarding the explanation of carelessness or lack of memory, and that sustains the verdict and disposes of the questions raised upon this appeal.

*By the Court.*—Judgment affirmed.