CARCHIDI, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 13—June 22, 1925.*

*Statutes: Construction leading to absurd result: Evil to be remedied: Constitutional law: Immunity statutes: Testimony not tending to convict: Courts: Stare decisis: Questions germane but not necessary to decision.*

1. Where a court discusses and decides a question legitimately in the case but not necessary to its decision, its conclusion will be treated as *stare decisis.* p. 442.
2. A statute should not be construed so as to work an absurd result, and the possibility of such a construction creates ambiguity and justifies a resort to rules of construction to avert such a result. p. 443.
3. To ascertain the legislative intent in enacting a statute the court may look to the evil to be remedied and the evident purpose of the legislation. p. 444.
4. Where an accused, charged with obtaining money under false pretenses, had testified concerning the transaction before a grand jury in connection with his testimony as to corrupt proposals for settlement, but his testimony tended to show innocence rather than guilt, he was not immune from prosecution under secs. 4078 and 4575*n*, Stats., as his testimony was not such as he was entitled to withhold under the constitutional privilege, and the immunity statutes are no broader than such privilege. p. 444.

ERROR to review a judgment of the circuit court for Milwaukee county; WALTER SCHINZ, Circuit Judge. *Affirmed.*

For the plaintiff in error there was a brief signed by *W. B. Rubin* of Milwaukee, attorney, and oral argument by *Mr. Rubin.*

For the defendant in error there was a brief by *Eugene Wengert,* district attorney of Milwaukee county, and *F. X. Swietlik,* special assistant district attorney, and oral argument by *Mr. Swietlik.*

OWEN, J.    The defendant was convicted of the crime of obtaining money under false pretenses.    He interposed a

plea in bar to the information which was overruled.    This is assigned as error.

The plea in bar was to the effect that while the instant case was pending in the municipal court of Milwaukee county a grand jury, duly impaneled out of said court to hear and determine various matters to be then and there brought before said grand jury, did subpœna the above named defendant, and did then and there compel him by process of said subpœna and under oath, and under promise of immunity then and there granted him by said grand jury, to give, and he did so give, testimony of and concerning all of the matters and things set forth in this said information.

It appears from the evidence introduced on the'trial of the issue raised by the plea in bar that shortly after the defendant's arrest, and while this case was pending in the courts, he was called before a grand jury then in session in the county of Milwaukee.    Five or six cases besides this one, charging him with criminal offenses, such as embezzlement, larceny as bailee, etc., were then pending against him in the courts of Milwaukee county.    He testified concerning his relations with the district attorney of that county, insinuating that corrupt proposals had been made to him either by the district attorney, or by agents representing the district attorney, for the settlement and disposition of those cases.    After so testifying, he was asked by one of the prosecuting attorneys before the grand jury the following questions and he made the following answers:

"*Q.* Any other questions with reference to these transactions?    Was there anything else, *Mr. Carchidi,* that you had forgotten to tell us the last time you were on the stand, with reference to these matters?    *A.* Well, I wanted to say further that the day you called me up to Mr. Hudnall's office in the Pabst building, that the day after Mr. Zabel issued another warrant, I owed $3,000 on a piece of property which I gave someone a mortgage, and I didn't pay the interest last June, and this party started foreclosure, and that was . . . it

is now in foreclosure proceeding. But the day after you called me up to your office there was another warrant.

"*Q.* For what? *A.* For taking $3,000 under false pretenses, and I had to put up another $4,000 bail.

"Mr. Hudnall: That case has not been tried? *A.* Pardon me?

"*Q.* That case has not been tried? *A.* No, sir.

"*Q.* Who is the attorney in the foreclosure action? *A.* Julius Roehl.

"*Q.* And who is the complainant in the criminal action? *A.* Barbara Pautz.

"*Q.* They dismissed 3 and 4 up here, and then there is the new one? *A.* Yes, sir.

"*Q.* Since they knew you were at the grand jury? *A.* Yes, sir.

"Mr. Boesel: *Q.* Yes, you notified us the day after you were in our office. *A.* Yes, sir.

"*Q.* You say there is no foundation whatsoever for the issuance of this last warrant against you? *A.* Well, I don't think so, because this woman had a mortgage and she had four altogether. Three I paid since I came back, and this one is still pending now. She started foreclosure and I don't think I took the money from her. She bought a mortgage.

"Juror Mueller: *Q.* Did you misrepresent the value to her when you sold the mortgage? *A.* I did not tell her the value. I show her the mortgage.

"*Q.* You sold her the mortgage? *A.* Yes, I show her the property and gave her a mortgage, and she took it like many other mortgages which she had previous to that. If she had come to me and say I wanted my money, I would have paid her, but she called me over to Julius Roehl's office. I went over one evening. Mr. Roehl said he wanted to see me, and he said 'pay this mortgage,' and I told him I would not pay this until that criminal case she had pending against me for the $1,500 is dismissed.

"*Q.* Is that this same case? *A.* This same woman.

"*Q.* Is that this same case now, or is that another case? *A.* It is the same woman.

"*Q.* It is the same woman but another case? *A.* Another case, and I told him I pay the mortgage when the criminal charge they made against me while I was abroad was dis-

missed, and Julius Roehl told me I shall pay that mortgage; that when the case will be called she will be out of town. I told him he should take it up with Mr. Rubin and if he had advised me to pay I will pay."

That is all the testimony the defendant gave before the grand jury concerning the transaction upon which he was prosecuted and convicted in the instant case. It is urged that the giving of this testimony before the grand jury entitled him to immunity under either sec. 4078 or sec. 4575$n$, Stats. There is some controversy as to whether he can claim immunity under sec. 4078, as that section is limited to cases involving the official conduct of public officers, and the record does not disclose that the grand jury then in session was called for the purpose of investigating the official conduct of the public officers of Milwaukee county. However, the immunity provision of sec. 4078 is practically the same as that of sec. 4575$n$, and we choose to discuss the subject upon the assumption that either or both sections apply. The immunity provision of sec. 4078 reads: "But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may testify, or produce evidence, documentary or otherwise, in such action, proceeding or examination, except a prosecution for perjury committed in giving such testimony." We shall assume that the testimony given by the defendant before the grand jury falls within the scope of sec. 4078 and shall consider whether the testimony so given entitles him to the immunity provided by that section.

The statute, in terms, exempts one from prosecution "for or on account of any transaction, matter or thing concerning which he may testify." The question of the juror to the defendant, "Did you misrepresent the value to her when you sold the mortgage?" comes very close to an interrogation concerning the transaction upon which the prosecution was based, and his answer to that question amounts to testimony

concerning the "transaction" which forms the basis of his conviction. The testimony does not, however, in any manner or to any degree tend to convict him of any crime.

It is contended by the defendant that mere testimony relating to a transaction, even though it does not in any manner tend to convict the witness of any crime, absolves him from any prosecution based upon the transaction concerning which he testifies. This question was considered and discussed by Mr. Justice DODGE in *State v. Murphy*, 128 Wis. 201, 107 N. W. 470, and the conclusion there reached seems to support this contention. That conclusion, however, met with most vigorous dissents from Justices MARSHALL, KERWIN, and WINSLOW, and seems to be out of harmony with the following case of *Rudolph v. State*, 128 Wis. 222, 107 N. W. 466, in which the opinion was written by Mr. Justice SIEBECKER. It is emphatically stated by Mr. Justice MARSHALL in his concurring opinion that the conclusions of Mr. Justice DODGE were not approved by the other members of the court at the time the case was decided in conference prior to the writing of the opinion, and that from a reading of the opinion he, Mr. Justice MARSHALL, did not appreciate the exact conclusion reached by Mr. Justice DODGE. Although the question so thoroughly discussed by Mr. Justice DODGE was not necessary to a decision of the case, it was legitimately in the case and was very properly discussed and decided. Under such circumstances the conclusion reached will be treated as *stare decisis* by this court. *School Dist. No. 4 v. First Wis. Co., ante,* p. 150, 203 N. W. 939. However, in view of the great doubt which the report of the case leaves as to whether that conclusion had the sanction of a majority of the members of the court, we do not feel bound by the conclusion there announced and consider the question an open one for original determination.

We are unanimously of the opinion that the correct rule of construction to be given our immunity statutes finds expression in the concurring opinions of Mr. Justice MAR-

SHALL and Mr. Justice WINSLOW in *State v. Murphy,* 128 Wis. 201, 107 N. W. 470. It is plain that these immunity statutes, to be found in many states as well as in the acts of Congress, originated because of the constitutional provision that no witness shall be compelled in any criminal case to be a witness against himself. These immunity statutes were enacted for the purpose of procuring evidence which was not available because of this constitutional provision. Such a statute was first suggested in the opinion of the United States supreme court in the case of *Counselman v. Hitchcock,* 142 U. S. 547, 12 Sup. Ct. 195. Following the suggestion there made, which held sec. 860, U. S. Statutes, unconstitutional because the immunity granted by said sec. 860 was not as broad as the constitutional privilege, the act of Congress of February 11, 1893 (27 U. S. Stats. at Large, 443), was passed as an amendment to the Interstate Commerce Law. This act was held constitutional in *Brown v. Walker,* 161 U. S. 591, 16 Sup. Ct. 644. The immunity provision of that statute is identical with the similar provision of sec. 4078. It is broad and sweeping, but it was made so in order that the statutory immunity might be coextensive with the constitutional privilege.

The legislative purpose in enacting these statutes negatives the idea that it was intended to grant an immunity broader than the constitutional privilege. The purpose of enacting such statutes was to facilitate the prosecution of crime, not to grant amnesty. While, as pointed out in the opinion of Mr. Justice DODGE, upon a literal reading of the statute it must be held broader than the constitutional privilege, it must be agreed, also, as stated by Mr. Justice MARSHALL in his concurring opinion, that to so construe it would be to convict the legislative body of absurdity. A statute should not be construed so as to work an absurd result, and when it may be so construed ambiguity results, and justifies the invoking of principles of statutory construction to avert such a result.

A dominant principle of statutory construction is that to ascertain the legislative intent we may look to the evil to be remedied and the evident purpose of the legislation. When we do that, taking into consideration the development of criminal law in this country, the difficulties that the public have encountered in securing convictions in certain classes of cases, we have no doubt that these statutes were passed for the express purpose of placing at the disposal of public prosecutors evidence which the constitutional provision denied, and that in order to entitle a witness to the immunity granted by these statutes the evidence given by him must have been of a character which he was privileged to withhold under the constitutional provision. Testimony given by him which he is not privileged to withhold by reason of the constitutional provision does not entitle him to the immunity afforded by the statutes under consideration.

A consideration of the evidence given by the defendant before the grand jury discloses that he there testified to nothing that in any manner or in the remotest degree could tend to convict him of crime. Such testimony as he gave with reference to the transaction upon which his conviction in this case is based went to the establishment of his innocence rather than his guilt. He denied that he did or said anything tending to defraud or which could be considered as obtaining money under false pretenses, and in no view of the case should his plea in bar have been sustained. Our attention has been called to no authority in conflict with this conclusion except the case of *U. S. v. Armour & Co.* 142 Fed. 808, referred to in Mr. Justice DODGE's opinion, expressing views which this court deliberately refused to sanction, according to the note written by Mr. Justice MARSHALL, to be found at page 217.

This general treatment of the principal question presented by this record and discussed by counsel makes it unnecessary for us to consider some subsidiary questions discussed in the

brief.   All questions discussed have received consideration, but in view of our conclusions already expressed it is unnecessary to give them special notice.

*By the Court.*—Judgment affirmed.