THE STATE, Plaintiff, vs. GROSNICKLE, Defendant.

*December 12, 1925—January 12, 1926.*

*Witnesses: Self-incrimination: Immunity from prosecution: Right or privilege?   Failure to claim privilege: Witness under subpœna by defendant.*

1. A "right" is a claim for the enforcement, redress, or protection of which the jurisdiction of a court may properly be invoked, while a "privilege" releases one from the performance of a duty or obligation or exempts one from a liability which he would otherwise be required to perform or sustain in common with all other persons.   p. 22.
2. A witness who, in obedience to a subpœna, attended, and under oath testified without objection for defendant, at a preliminary examination in a criminal prosecution for violation of sec. 165.01, Stats., waived his privilege, and was not entitled to claim immunity, under sub. (25) of that section, from prosecution because of such testimony.   p. 26.

[3. Whether the immunity statute is applicable where a witness is brought into court by subpœna on behalf of the defendant, or whether such immunity is limited to witnesses called by the state, not decided.]   p. 21.

QUESTION REPORTED under the provisions of sec. 358.08, Stàts., from the circuit court for Vilas county to this court: A. H. REID, Circuit Judge.   *Answered "No."*

The cause was submitted for the plaintiff on the brief of the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, and for the defendant on that of *N. A. Colman* of Eagle River.

ROSENBERRY, J.   The defendant was charged by an information filed in the circuit court for Vilas county with having on the 10th day of January, 1925, had in his possession certain intoxicating liquor commonly known as "moonshine," and was on the second count likewise charged with the transportation thereof.   The defendant was arraigned in the municipal court, and testimony given by him in the case of State of Wisconsin v. Arthur Van Rossen was introduced in evidence over the defendant's objection.   He was thereupon bound over for trial in the circuit court, was found guilty, but before imposing judgment the trial court certified, under the provisions of sec. 358.08, Stats., facts and questions as follows:

"The above named defendant having this day been put upon his trial in this court, upon an information filed by the district attorney charging him with violations of the provisions of section 165.01 of the Statutes of Wisconsin, consisting of,

"First, unlawfully having in his possession on January 10, 1925, certain intoxicating liquor known as moonshine, the same being privately distilled liquor manufactured without any permit therefor, and,

"Second, unlawfully transporting said liquor on the same day,

"And the defendant having this day been convicted of the offenses charged in the information, and the court being of the opinion that there has arisen in this case a question of law which is so important and so doubtful as to require the decision of the supreme court thereon before the imposition of any sentence against the defendant, therefore such question so requiring decision is hereby certified to the supreme court of the state of Wisconsin, for decision thereon, as follows:

"In the action now pending in this court and about to be tried, wherein the State of Wisconsin is plaintiff and Arthur Van Rossen is defendant, a preliminary examination was held in the municipal court of Vilas county on January 12, 1925. Said Van Rossen was charged in said preliminary examination with unlawfully having in his possession on January 10, 1925, certain intoxicating liquor known as moonshine, the same being privately manufactured distilled liquor, and it was further charged that he, the said Van Rossen, on the said date did unlawfully conceal, secrete, and destroy certain fluid, to wit, moonshine, with intent to prevent the sheriff and his assistants from seizing the same as evidence of illegal possession of privately manufactured intoxicating liquor.

"Upon said preliminary examination the defendant Arthur Van Rossen caused to be duly subpœnaed as a witness on his part, *Ray Grosnickle,* and said *Grosnickle,* in obedience to said subpœna and under oath, upon said preliminary examination testified on behalf of the defendant Van Rossen that on January 10, 1925, he resided with his family in apartments on the second floor of a building in the village of Eagle River in said county, and that the defendant Van Rossen lived in a room adjoining the witness's apartments; that the witness *Grosnickle* on said date carried into the room of said Van Rossen, who was then in bed, two bottles containing moonshine for the use of Van Rossen, who drank some of the same; that he, *Grosnickle,* did not deal in moonshine, but that he had brought the said moonshine from Spooner, Wisconsin, for his private use.

"Said *Grosnickle* did not at any time before giving said testimony object to testifying nor state that he claimed any privilege to refuse to give testimony on the ground that his

answers to the questions propounded might tend to incriminate him, nor upon any other ground, but testified freely, first on the examination of Van Rossen's attorney and then on cross-examination by the district attorney.

"Thereupon the defendant herein, *Ray Grosnickle,* was arrested on a warrant issued out of the municipal court of Vilas county, and upon due preliminary examination was bound over to the circuit court of Vilas county for trial, and said case was called for trial on this 14th day of January, 1925, and the defendant, upon being arraigned upon the information aforesaid, entered a plea in bar to any prosecution herein, upon the ground that he is immune from prosecution under paragraph 25 of section 165.01 of the Statutes, because of his having given testimony as aforesaid at the preliminary examination in the case of the State of Wisconsin against Arthur Van Rossen.

"The court overruled said plea. Thereupon the defendant admitted to be true the facts which he testified to in the said preliminary examination in the case of State v. Van Rossen, and the court thereupon pronounced him guilty of the offenses charged in the information. But the court being of the opinion that its ruling upon said question of immunity is upon a question of law which is so important and doubtful as to require the decision of the supreme court before the defendant be sentenced, does hereby certify to the supreme court of the state of Wisconsin for decision the following question:

"*In case a natural person is duly subpœnaed by, and in obedience to the subpœna attends, and under oath testifies without objection as a witness for, the defendant at a preliminary examination in a criminal prosecution for violation of the provisions of section 165.01 of the Statutes, is said person immune from prosecution and penalty on account of any transaction, matter, or thing as to which in obedience to said subpœna and under oath he so testified?*

"Witness the seal of the said circuit court of Vilas county and the signature of the presiding judge of said court hereto, this 14th day of January, 1925."

Upon this record two questions are presented, although but one is in form included in the report: (1st) Can a nat-

State v. Grosnickle, 189 Wis. 17.

ural person claim the benefit of the immunity granted by sec. 165.01 where he has testified without having claimed his constitutional privilege? and (2d) Is the immunity statute applicable where a witness is brought into court by subpœna on behalf of the defendant, or is such immunity limited to witnesses called and used by the State?

We do not find it necessary to decide the second question, but we take this occasion to call attention to its importance to the State. Under the National Prohibition Act, sec. 30 of which is identical with sub. (25), sec. 165.01, Stats. Wis., it was held that the immunity was limited to witnesses called by the prosecution. *U. S. v. Ernest,* 280 Fed. 515. The question, however, is expressly reserved here with the hope that when it is presented the subject will be sufficiently considered and analyzed and authorities digested and cited in a manner which the importance of the question demands; and in this connection we may call attention to the fact that in 4 Wigmore on Evidence (2d ed.), ch. LXXVIII, there is to be found an exhaustive and thorough history of the whole matter of the privilege for self-incriminating facts, no reference to which was made in either brief.

A brief review of the origin of the constitutional privilege will be helpful in reaching a proper answer to question No. 1. The legal principle which found expression in our constitution had its origin contemporaneously with the English revolution, but curiously enough no reference was made to it in the bill of rights of 1689. A hundred years later, however, it was embodied in the constitution of the United States and is now found in the constitution of nearly every state in the Union, and various aspects of it have been many times under consideration by the courts. A great deal of the confusion to be found in the literature and decisions respecting the nature and extent of the privilege is due no doubt to our confused and inaccurate legal nomenclature. It is many times spoken of as a right, and this leads us, for

the purposes of this discussion, to draw a distinction between right and privilege. One would be rash indeed who should attempt to frame an all-inclusive definition of right, but for our purposes it may be said that a right is a claim for the enforcement, redress, or protection of which the jurisdiction of a court may be properly invoked.[1]

While the term "privilege" is often used as synonymous with the term "right," it is not an accurate use of the term. To be sure, the granting of a privilege may confer a right. Originally, all persons might be required to appear in court and there compelled to answer under their oaths in the manner and form provided by law as to any matter about which the court sought to inquire. This was a duty which the citizen owed to the state and one which he might by appropriate legal process be compelled to perform. With the development of the doctrine that one should not be compelled to incriminate himself, a witness was released from the performance of this duty to that extent. This situation is described as privilege from self-incrimination. A privilege has been defined "to be a particular or peculiar benefit enjoyed by a person, company, or class beyond the common advantages of other citizens,—an exceptional or extraordinary exemption, or an immunity held beyond the course of the law." *State v. Cantwell,* 142 N. C. 604, 55 S. E. 820, 8 L. R. A. N. s. 498. See, also, *Anderson v. Rountree,* 1 Pin. 115, 118.

Strictly speaking, a privilege releases one from the performance of a duty or obligation or exempts one from a liability which he would otherwise be required to perform or sustain in common with all other persons. A member of the legislature, under certain circumstances, is said to be privileged from arrest, which means that he is for the time being exempt from process of the courts. We cannot

---

[1] See Hohfeld, Fundamental Legal Conceptions, 46 *et seq.*

pursue the matter further. Privilege from self-incrimination was in its origin an exemption because the party or witness was thereby exempted from the obligation which rested upon him by law to testify in the courts of the sovereign when called upon to do so. Nothing can be clearer than that it was not a right which either a witness or a party enjoyed for the benefit of himself or third parties. Being a privilege, immunity, or exemption, it could only exist when a situation arose which made the exemption applicable. In the absence of the necessary facts it had no existence. It did not free the witness from liability to questioning. 4 Wigmore, Evidence (2d ed.) § 2268, and cases cited.

Upon the question being propounded, the witness alone could know whether or not an answer given in accordance with the fact would tend to incriminate him. Therefore, it has been held from the earliest time that the privilege does not arise until it is claimed. It then becomes the duty of the judge, under established rules of law, to determine whether or not the claimed privilege exists.

We come now to a consideration of the statute, sub. (25), sec. 165.01:

*"Immunity to testify.* No person shall be excused, on the ground that it may tend to incriminate him or subject him to a penalty or forfeiture, from attending and testifying, or producing books, papers, documents, and other evidence in obedience to a subpœna of any court in any proceeding growing out of any alleged violation of this chapter; but no natural person shall be prosecuted or subjected to any penalty or forfeiture on account of any transaction, matter, or thing as to which, in obedience to a subpœna and under oath, he may so testify or produce evidence. No person shall be exempt from prosecution and punishment for perjury committed in so testifying."

This is one of several sections of the statutes of this state conferring immunity. Its language is very broad. A sim-

ilar statute was under consideration in *State v. Murphy,* 128 Wis. 201, 107 N. W. 470; *Rudolph v. State,* 128 Wis. 222, 107 N. W. 466; *Carchidi v. State,* 187 Wis. 438, 204 N. W. 473.  What was said of the statute in those cases need not be repeated here.  It was finally held that the statute was co-extensive with the constitutional privilege; that the testimony given with relation to a transaction must tend to indicate that the witness is guilty of some criminality or else the immunity does not exist.  What is said in *Carchidi v. State* amounts to an overruling of *State v. Murphy* so far as that case held that the statute is broader than the constitutional provision.  In view of the history of the doctrine and the serious consequences which would follow if witnesses were permitted to immunize themselves without claiming their privilege, we should be very loath to construe a statute as being broader than the constitutional provision where the intent of the legislature was not expressed in the clearest and most explicit terms.

In regard to the policy of this provision, in *State v. Lloyd,* 152 Wis. 24, 139 N. W. 514, Mr. Justice TIMLIN said:

"The constitutional rights of the citizen secured to him by the provision in question should be carefully guarded, but it is safe to say that it was never intended by the framers of the constitution that this clause should be so construed and applied as to make it principally the buckler and shield of crime or so as to furnish an easy means of escape from deserved responsibility for criminal conduct.  It may be freely conceded that there is great inherent difficulty in adopting and following consistent rules which will subserve both purposes.  In the nature of things there must often arise under such provisions close border-line cases calling for keen discrimination and frequently turning upon questions of fact.  It has been suggested by writers who deal with problems of government that the presence of this constitutional provision in the federal and most state constitutions and the broad scope that has been by judicial interpretation given to it has some causal relation to the great

number of crimes in this country or the inefficiency of the machinery for detection and punishment thereof."

And in this connection we quote the rather emphatic language of Dean Wigmore. Speaking of the constitutional privilege he said:

"Indirectly and ultimately it works for good,—for the good of the innocent accused and of the community at large. But directly and concretely it works for ill,—for the protection of the guilty and the consequent derangement of civic order. The current judicial habit is to ignore its latter aspect, and to laud it indiscriminatingly with false cant. A stranger from another legal sphere might imagine, in the perusal of our precedents, that the guilty criminal was the fond object of the court's doting tenderness, guiding him at every step in the path of unrectitude, and lifting up his feet lest he fall into the pits digged for him by justice and by his own offenses. The judicial practice, now too common, of treating with warm and fostering respect every appeal to this privilege, and of amiably feigning each guilty invocator to be an unsullied victim hounded by the persecutions of a tyrant, is a mark of traditional sentimentality. It involves a confusion between the abstract privilege—which is indeed a bulwark of justice—and the individual entitled to it—who may be a monster of crime. There is no reason why judges should lend themselves to confirming the insidious impression that crime in itself is worthy of protection." 4 Wigmore, Evidence (2d ed.) § 2251.

To so construe the statute as to make its provisions broader than the exemption granted by the constitution would be to accentuate the evil pointed out by these learned jurists. Should the legislature ever seek to grant a general amnesty to all witnesses, it ought to declare its purposes in clear and unmistakable language. A number of immunity statutes have been held unconstitutional because they were not so broad as the constitutional privilege, and, as pointed out in *Carchidi v. State, supra,* this is no doubt the reason for the very comprehensive language of the clause in question.

By a long line of authorities, the defendant in this case having, upon the trial in which he testified, failed to claim his privilege, he waived it and cannot now claim immunity under sub. (25), sec. 165.01.   The immunity statute can apply only where the privilege is claimed and the witness is compelled to answer.   From what has been said, it follows that the question propounded by the trial court must be answered "No."

*By the Court.*—The question certified by the circuit court for Vilas county is answered "No."