STATE, Respondent, v. ALIOTO, Appellant. [Case No. State 214.] *

STATE, Respondent, v. MANIACI, Appellant. [Case No. State 215.] *

*Nos. State 214, 215. Argued June 4, 1974.—Decided June 28, 1974.*
(Also reported in 219 N. W. 2d 585.)

* Motions for rehearing denied, without costs, on September 4, 1974.

For the appellants there was a brief by *Joseph P. Balistrieri* and *Balistrieri & Balistrieri*, all of Milwaukee, and oral argument by *Joseph P. Balistrieri*.

For the respondent the cause was argued by *Stephen L. Morgan*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

HANLEY, J.  On appeal, the defendants challenge said convictions on the grounds that:

1. The evidence educed was insufficient to support the convictions;

2. The defendants were entitled to immunity from prosecution under secs. 77.61 (12) and 885.25 (2), Stats. 1969;

3. The defendants were denied due process of law;

4. The admission into evidence of prior convictions of defendant Alioto constituted prejudicial error, and

5. The trial court, in improperly commenting on the evidence, committed prejudicial error.

*Sufficiency of evidence.*

The defendants contend that the evidence was insufficient to support a finding that they falsely and fraudulently filed state sales tax returns in that the state failed to prove that such *unreported* "total sales" of Mando, Inc., were not exempt from taxation under the selective state sales tax. We find no merit in this contention.

The defendants claim that the unreported "total sales" of Mando for April through June, 1968 ($6,978.05, $8,701.80 and $7,900 respectively) consisted of:

1. Sales of food to employees;

2. Cover charges, and

3. Minimum charges.

Since, the defendants contend, these sales were exempt from taxation and because the state had failed to disprove that such sales did in fact take place, the state has failed to prove beyond a reasonable doubt that the de-

fendants made a false and fraudulent state sales tax return. This contention fails on two specific grounds.

Initially, the defendants' contentions that cover and minimum charges are exempt from state sales tax is in error. The trial court's finding to the contrary is correct. Sec. 77.52 (2) (a) 2, Stats. 1967. Similarly to contend, as the defendants do, that such unreported "total sales" (approximately $23,600 over the three-month period) consisted of sales of food to employees—sec. 77.52 (1) (a) 7, Stats. 1967—is difficult of belief since the amount is one-half of the business "total sales."

Additionally, the defendants' contention that the state had failed to meet its burden of proof because it failed to disprove the possibility that the $23,600 item of unreported sales was exempt from sales tax liability is without merit. The state has met its burden of proof by showing that Mando had unreported "total sales" of more than $23,600. Having established this fact, the burden of going forward with the evidence shifted to Mando— and in the instant case the two defendants—to show, that despite the existence of "total sales" in excess of those reported, no additional sales tax liability arose. Stated another way, the state is aided by a presumption to the effect that all exemptions or deductions listed in the defendants' sales tax return are all that exist for no taxpayer would intentionally fail to report all tax saving deductions.[1] While this presumption may be rebutted in the face of a silent record such as in the case at bar, such evidence is sufficient to support a finding of guilt.

In the instant case, the state did prove that $23,600 of "total sales" was unreported by Mando and the indi-

---

[1] *United States v. Bender* (7th Cir. 1955), 218 Fed. 2d 869, certiorari denied, 349 U. S. 920, 75 Sup. Ct. 660, 99 L. Ed. 1253; *United States v. Stayback* (3d Cir. 1954), 212 Fed. 2d 313, certiorari denied, 348 U. S. 911, 75 Sup. Ct. 289, 99 L. Ed. 714; *Dillon v. United States* (8th Cir. 1955), 218 Fed. 2d 97, certiorari dismissed, 350 U. S. 906, 76 Sup. Ct. 191, 100 L. Ed. 796; *United States v. Wainwright* (10th Cir. 1969), 413 Fed. 2d 796.

vidual defendants. As a result of such a gross misrepresentation of "total sales," Mando and the defendants sought to evade the state selective sales tax due thereon. The defendants offered no evidence to rebut the presumption that no other exemptions or deductions existed and that such unreported "total sales" were not taxable. Thus, the state met its burden of proof as to this aspect of the alleged violation of sec. 77.60 (6), Stats. 1967. Such evidence was sufficient that this court could conclude that the trier of facts, acting reasonably, could be so convinced by evidence it had a right to believe that Maniaci and Alioto did, as parties to the crime, falsely and fraudulently file state tax returns with the intent to evade said tax thereby.

*Question of immunity.*

The defendants contend that they both enjoyed immunity from criminal prosecution to secs. 885.25 (2) and 77.61 (12), Stats. 1969. Since, the defendants contend, Joseph Maniaci was required to turn over the corporate records of Mando Enterprises, Inc., pursuant to a subpoena duces tecum issued by the Wisconsin department of revenue and later initiated contempt of an administrative agency proceedings (sec. 885.12) they enjoyed immunity from criminal prosecution under sec. 885.25.

Sec. 885.25 (2). "No officer, clerk, agent, employe or servant of any corporation in any such action shall be excused from attending or testifying or from producing books, papers, tariffs, contracts, agreements, records, files or documents, in his possession or under his control, in obedience to the subpoena of any court in which any such civil action is pending or before any officer of court empowered or authorized to take deposition or testimony in any such action, in obedience to the subpoena of such officer or court, or of any officer or court empowered to issue a subpoena in that behalf, on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him, may tend to criminate him or subject him to a penalty or a forfeiture, but no such

officer, clerk, agent, employe or servant shall be prosecuted, or subjected to any penalty or forfeiture, for or on account of any transaction, matter or thing concerning which he may testify or produce evidence, documentary or otherwise, before such court or officer, or any court or officer empowered to issue subpoena in that behalf, or in any such case or proceeding except a prosecution for perjury or false swearing in giving such testimony."

We do not agree with defendants' contention.

Initially, it cannot be contended that any criminal immunity attached to Jennie Alioto as a result of the delivery of corporate records in the instant action. Jennie Alioto neither was subpoenaed nor did she deliver said records to either the court or the department of revenue. Likewise, pursuant to principles established by this court in previous constructions of similar immunity statutes, it cannot be ruled that Joseph Maniaci was imbued with immunity from criminal prosecution as a result of his delivery to the court of the corporate records of Mando, Inc.

The basic principles involved in the construction of state immunity statutes were first discussed in the case of *State v. Murphy* (1906), 128 Wis. 201, 107 N. W. 470, and later solidified in *Carchidi v. State* (1925), 187 Wis. 438, 204 N. W. 473, wherein the court determined that the immunity granted by such statutes is coextensive with the individual's fifth amendment rights against self-incrimination.

"It is plain that these immunity statutes, . . . originated because of the constitutional provision that no witness shall be compelled in any criminal case to be a witness against himself. These immunity statutes were enacted for the purpose of procuring evidence which was not available because of this constitutional provision. . . .

"The legislative purpose in enacting these statutes negatives the idea that it was intended to grant an immunity broader than the constitutional privilege. The purpose of enacting such statutes was to facilitate the

prosecution of crime, not to grant amnesty." *Id.* at page 443.

The principle was re-established in *State ex rel. Rizzo v. County Court* (1966), 32 Wis. 2d 642, 146 N. W. 2d 499, 148 N. W. 2d 86, wherein the court held that:

"Statutory procedures which allow testimony to be compelled by court order and which grant immunity from prosecution to the witness so testifying are based on the theory of *quid pro quo*. In exchange for information that a prosecutor could not otherwise obtain, the witness receives immunity from prosecution for the crimes to which his testimony relates." *Id.* at page 646.

While the ruling in *Carchidi, supra,* involved the construction of sec. 4078, Stats. 1923 [2] and *Rizzo* involved sec. 885.34, Stats. 1965 [3] such state immunity statutes are

---

[2] *"No witness* or party in an action brought upon the bond of a public officer, or in an action by the state or any municipality to recover public money received by or deposited with the defendant, or in any action, proceeding or examination, instituted by or in behalf of the state or any municipality, involving the official conduct of any officer thereof, *shall be excused from testifying on the grounds that his testimony may expose him to prosecution for any crime, misdemeanor or forfeiture. But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may testify, or produce evidence, documentary or otherwise,* in such action, proceeding or examination, except a prosecution for perjury committed in giving such testimony." (Emphasis added.)

[3] "885.34 **Incriminating testimony compelled; immunity.** Whenever any person shall refuse to testify or to produce books, papers or documents when required to do so in any criminal examination, hearing or prosecution for the reason that the testimony or evidence required of him may tend to criminate him or subject him to a forfeiture or penalty, he may nevertheless be compelled to testify or produce such evidence by order of the court on motion of the district attorney. But no person who testifies or produces evidence in obedience to the command of the court in such case shall be liable to any forfeiture or penalty for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence; but no person shall be exempted from prosecution and punishment for perjury committed in so testifying."

similar in language and exact in application to sec. 885.25 (2). Since such immunity statutes as sec. 885.25 (2), are merely coextensive with defendant's fifth amendment rights against self-incrimination, and since the fifth amendment privilege does not attach to the records of a corporation, *State v. Balistrieri* (1972), 55 Wis. 2d 513, 522, 201 N. W. 2d 18, then no immunity was imbued to Joseph Maniaci as a result of his delivery to the court of the corporate records of Mando, Inc.

Even if immunity could have attached as a result of the actions of defendant Maniaci, such immunity would not have existed in the instant action. This court has held that a witness must claim his privilege against self-incrimination prior to the attaching of a grant of immunity. *Wolke v. Fleming* (1964), 24 Wis. 2d 606, 618, 129 N. W. 2d 841; *State v. Davidson* (1943), 242 Wis. 406, 8 N. W. 2d 275. Since no such claim was made by Maniaci in the instant action, immunity could not have attached.

Defendants also claim that immunity attached as a result of sec. 77.61 (12), Stats. 1969.[4] The claim is without merit. The immunity granted by sec. 77.61 (12) is coextensive with that granted by sec. 885.25 (2) and other similar state immunity statutes. Therefore, Alioto did not obtain immunity because of her lack of standing and Maniaci was without immunity because of the failure of his fifth amendment privilege to attach to those

---

[4] "No natural person shall be excused from testifying or from producing any books, papers, records or memoranda in any investigation, or upon any hearing when ordered to do so by the secretary of revenue or his designee upon the ground that the testimony or evidence, documentary or otherwise, may tend to incriminate him or subject him to criminal penalty, but no such natural person so ordered shall be prosecuted or subjected to any criminal penalty for or on account of such testimony or books, papers, records or memoranda which he produces upon such investigation or hearing. No person so testifying shall be exempt from prosecution and punishment in perjury in so testifying."

corporate records disclosed and because of his failure to exercise his fifth amendment right.

*Due process.*

The defendants contend that their constitutional rights to due process of law were violated as a result of the state's failure to comply with the provisions of sec. 77.59, Stats. 1967, as applied to the determination of the deficiency of Mando's sales tax return. Such provisions of sec. 77.59 including the right to a written notice of deficiency and a deficiency redetermination proceeding must—the defendants contend—be afforded them in a criminal action for sales tax evasion. This contention is without merit.

Violation of revenue laws may be proceeded against under two distinct types of actions—civil and criminal. This was recognized in *State v. Roggensack* (1962), 15 Wis. 2d 625, 113 N. W. 2d 389, 114 N. W. 2d 459, wherein the court stated that:

"It is not unusual in the law, especially in revenue laws, for legislatures and the congress to provide both a civil and a criminal sanction for the same act." *Id.* at page 630.

Such civil and criminal actions, by constitutional and statutory necessity, provide for different rights and procedures in those actions. Those rights and procedures are individual to each and not of general application.

The civil sanctions and procedures involved in the Wisconsin selective sales tax law are embodied in sec. 77.59 (1)–(7), (9) and 77.60 (1)–(4), Stats. 1967. These involve the right to notice, deficiency redetermination and others. These are, however, inapplicable to the criminal sanction incorporated therein.

"Notwithstanding any other provision of this subchapter, if a person . . . files a false or fraudulent report or return with the intent in either case to defeat or evade

tax required to be paid, the department may determine the proper tax due at any time . . . ." Sec. 77.59 (8), Stats. 1967.

This is also the situation in federal tax practice. Like Wisconsin, both civil and criminal sanctions are available in actions involving federal tax evasion. Each sanction—civil and criminal—involves individual rights and procedures. For example—any income tax deficiency attempted to be collected by the IRS is conditioned upon a prior deficiency assessment. However, such an assessment is not a condition of criminal prosecution.

"An assessment of a deficiency is not necessary to a criminal prosecution for a willful attempt to defeat and evade income tax. The crime is complete when the violator has knowingly and willfully filed fraudulent returns with intent to evade and defeat the tax. The perpetration of the crime is grounded upon knowledge on the part of the taxpayer that he has made an inaccurate return, and the Government's failure to discover the error and promptly to assess has no connection with the commission of the crime." 10 Mertens, *Law of Federal Income Taxation,* p. 32, sec. 55A.05.

The defendants' contention that they were denied due process of law because the state failed to comply with civil sales tax deficiency procedure in a criminal evasion case is totally without merit.

*Prior crimes.*

The defendants next contend that the court committed prejudicial error in admitting evidence of Jennie Alioto's prior conviction of 28 counts of sales tax evasion while acting as bookkeeper for Bals, Inc. Since such evidence is probative, however, of an intent or scheme on the part of Jennie Alioto to evade sales tax liability, we find no error in the admission of such facts into evidence. *Whitty v. State* (1967), 34 Wis. 2d 278, 149 N. W. 2d 557.

The defendants argue that since such judgments of conviction were still in the process of being appealed, such evidence should not have been admitted. The contention is without merit for even assuming that such judgments of conviction were still being appealed, which they were not, such facts are admissible into evidence. *Cheney v. State* (1969), 44 Wis. 2d 454, 171 N. W. 2d 339, 174 N. W. 2d 1. The pendency of an appeal does not bar the admission of a prior conviction if otherwise admissible.

Sec. 906.09 (5), Stats. 1973, provides:

"PENDENCY OF APPEAL. The pendency of an appeal therefrom does not render evidence of a conviction inadmissible. Evidence of the pendency of an appeal is admissible."

We conclude that the prior convictions were properly received in evidence.

*Remark of trial court.*

The defendants contend that the following trial court remark constitutes prejudicial error in that the court presumed guilt as a result of the defendants' failure to testify.

"And I think something has to be said about the necessity of a defendant at some point after evidence is amassed against it to explain away the logical inferences to be drawn from the plain reading of the books, that a higher income was received for gross sales than was reported on a sales tax form. Had the Court heard such logical explanations that might be a different matter. The Court has heard none."

What the trial court was attempting to communicate, in our opinion, was merely that the state, upon showing Mando's "total sales" to be grossly misrepresented, had introduced evidence sufficient to support a finding of guilt. Since the defendants had failed to introduce any evidence to rebut the presumption that any exemption or

deduction due the defendants had been claimed and that the unreported "total sales" is taxable, a conviction may be based thereupon. Such was the basis of the trial court's statement and that was not error.

*By the Court.*—Judgment affirmed.