STATE, Appellant, v. HALL, Respondent. [Case No. State 57.]

STATE EX REL. CLARK, Petitioner, v. CIRCUIT COURT, BRANCH II, DANE COUNTY, Respondent. [Case No. State 61.]

STATE EX REL. HINRICHS, Petitioner, v. CIRCUIT COURT, BRANCH II, DANE COUNTY, Respondent. [Case No. State 62.]

STATE EX REL. MONTGOMERY, Petitioner, v. CIRCUIT COURT, BRANCH II, DANE COUNTY, Respondent. [Case No. State 63.]

STATE EX REL. PHARO, Petitioner, v. CIRCUIT COURT, BRANCH II, DANE COUNTY, Respondent. [Case No. State 64.]

STATE EX REL. REUSCHLEIN, Petitioner, v. CIRCUIT COURT, BRANCH II, DANE COUNTY, Respondent. [Case No. State 65.]

*Nos. State 57, 61–65. Argued September 10, 1974.—Decided October 1, 1974.*

(Also reported in 221 N. W. 2d 806.)

20

For the appellant in Case No. St. 57 the cause was argued by *Michael L. Zaleski,* assistant attorney general, with whom on the briefs for the appeal and the brief in opposition to the cross appeal was *Robert W. Warren,* attorney general.

For the petitioners in Case Nos. St. 61, St. 62, St. 63, St. 64 and St. 65 there were joint briefs by *Whyte, Hirschboeck, Minahan, Harding & Harland, S. C.,* of Milwaukee; *Robert V. Abendroth, Don S. Peterson, Jack R. DeWitt,* and *DeWitt, McAndrews & Porter, S. C.,* all of Madison, for petitioners John R. Clark and Thomas F. Montgomery; *Adolph J. Bieberstein* and *Bieberstein, Cooper, Bruemmer, Gartzke & Hanson,* all of Madison, for petitioner Herman M. Hinrichs; *Robert J. Kay* and *Geisler & Kay,* all of Madison, for petitioner Clifford Reuschlein; *Carroll E. Metzner* and *Aberg, Bell, Blake & Metzner,* all of Madison, for petitioner Robert P. Pharo; and oral argument by *Mr. Abendroth* and *Robert J. Kay.*

For the respondent in Case No. St. 57 there was a brief for the appeal and a brief in support of the cross appeal by *Geisler & Kay,* attorneys, and *Robert J. Kay*

of counsel, all of Madison, and oral argument by *Robert J. Kay.*

For the respondent in Case Nos. St. 61, St. 62, St. 63, St. 64 and St. 65 the cause was argued by *Michael L. Zaleski,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

ROBERT W. HANSEN, J.  Testifying, pursuant to subpoena, before a grand jury investigating price-fixing practices in violation of state antitrust laws, the respondent, George Hall, was asked:

"*Q.* Would you give a firm denial to any bid rigging from 1960 through 1972? In other words, no, I did not participate in any bid rigging during that time?"

Respondent sought and secured a recess so that he could consult with his attorney. He returned to the grand jury room to state, "I desire to take the fifth amendment." He was not required nor compelled to answer the question. It was left unanswered.

Thereafter, the respondent was asked exactly four questions, two by the grand jury foreman and two by Juror Number 12. The first question asked by the foreman was:

"*Q.* Do you feel that there is something at this point that you would like to tell the jury?"

The respondent answered, ". . . from 1966 to 1970 when I terminated my extended or part-time employment." The foreman withdrew his question, and then asked:

"*Q.* . . . I would like to ask a question that revolves around the idea that if there is anything that has not been covered in the testimony that you have given, but areas that you feel we should know about to reach a good decision, that does not interfere with your fifth amend-

ment rights, that you would like to tell the jury about now?"

The respondent answered that he had spent a great deal of time outside the business in hospital, hospital fund drive and vocational school board activity, stating, "I had too many irons in the fire or trying to keep too many balls in the air to clearly recollect all of the things that might have gone on. . . ." Juror Number 12 then asked:

"Q. Mr. Hall, even though you were retired, you did kind of keep in contact with what was going on in the company, though you didn't up until now?"

The respondent answered, "No, sir," explaining that he increasingly moved away from activity in the years from 1966 on and devoted his time almost exclusively to noncompetitive or negotiated work. Juror Number 12 then asked:

"Q. But as I recall your testimony, several times you said your office. Now if you were drawing away from there why did you still keep an office there to keep going to if you wasn't going to be there?"

The respondent answered, "Well, after you've been connected with a business for almost fifty years, there are certain attachments that you develop. I have minor private business that I carry on," adding that he kept his personal files at the office and contributed to the handling of noncompetitive and negotiated work done by the company.

The witness was then excused, and it is on the basis of these four, really three, for one was withdrawn, questions asked and answered by him that the respondent claims immunity from prosecution under sec. 133.24, Stats.[1]

---

[1] Sec. 133.24, Stats., provides: "No privilege from self-accusation. No person shall be excused from answering any of the

Dealing with the claim of immunity because of the three questions asked and answered begins with their relationship to constitutional provisions providing that a person may not be compelled to be a witness against himself.[2] As this court has said, ". . . the immunity granted by such statutes is coextensive with the individual's fifth amendment rights against self-incrimination."[3] Such statutes may not stop short, but in this state have been held not to go beyond the constitutional right involved.[4] They are not amnesty nor forgiveness-

inquiries herein provided for, nor from attending and testifying, nor from producing any books, papers, contracts, agreements or documents in obedience to a subpoena issued by any lawful authority in any case or proceeding based upon or growing out of any alleged violation of any of the provisions of s. 133.21, or of any law of this state in regard to trusts, monopolies or illegal combinations on the ground of or for the reason that the answer, testimony, evidence, documentary or otherwise, required of him may tend to criminate him or subject him to a penalty or forfeiture; but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may answer, testify or produce evidence, documentary or otherwise, in obedience to any request under these provisions or any subpoena, or either of them, in any case or proceeding . . . ."

[2] "It is plain that these immunity statutes . . . originated because of the constitutional provision that no witness shall be compelled in any criminal case to be a witness against himself. These immunity statutes were enacted for the purpose of procuring evidence which was not available because of this constitutional provision. . . ." *Carchidi v. State* (1925), 187 Wis. 438, 443, 204 N. W. 473, citing the concurring opinions of Mr. Justice MARSHALL and Mr. Justice WINSLOW in *State v. Murphy* (1906), 128 Wis. 201, 107 N. W. 470.

[3] *State v. Alioto* (1974), 64 Wis. 2d 354, 361, 219 N. W. 2d 585, citing *Carchidi v. State, supra,* footnote 2.

[4] ". . . 'The statute is not broader than the constitutional guaranty for which it was intended to be a "substitute." The very idea of a substitute suggests the limitation of one as that of the other. In other words, that they are equivalents, one being exchanged, by force of the law, for the other.' " *State ex rel. Rizzo*

in-advance statutes.[5] Rather they are based on a *quid
pro quo* principle, an exchange of information that a
prosecutor could not otherwise obtain for immunity from
prosecution for the crimes to which the testimony of
the witness relates.[6] Several hurdles must be cleared
before a defendant can claim statutory immunity as a
defense to criminal prosecution under these statutes.

*Claim of privilege.* Initially, there must be a claim
of the fifth amendment privilege. This court has held
that ". . . a witness must claim his privilege against
self-incrimination prior to the attaching of a grant of
immunity."[7] During the prohibition era, the Wisconsin legislature enacted sec. 165.01, Stats. (now repealed),

---

*v. County Court* (1966), 32 Wis. 2d 642, 646, 146 N. W. 2d 499,
148 N. W. 2d 86, certiorari denied, 386 U. S. 1035, 87 Sup. Ct.
1486, 18 L. Ed. 2d 597, quoting "the fundamental rules" articulated
in Mr. Justice MARSHALL's opinion in *State v. Murphy* (1906),
128 Wis. 201, 219, 107 N. W. 470, and quoting Mr. Justice
WINSLOW's opinion in the same case, stating at page 221: " '. . .
In my judgment the immunity statute is as broad as the privilege
which it was passed to obviate, and no broader. . . .' "

[5] ". . . The purpose of enacting such statutes was to facilitate
the prosecution of crime, not to grant amnesty. . . ." *Carchidi
v. State, supra,* footnote 2, at page 443, quoted in *State v. Alioto,
supra,* footnote 3, at pages 361, 362.

[6] "Statutory procedures which allow testimony to be compelled
by court order and which grant immunity from prosecution to the
witness so testifying are based on the theory of *quid pro quo.* In
exchange for information that a prosecutor could not otherwise
obtain, the witness receives immunity from prosecution for the
crimes to which his testimony relates." *State ex rel. Rizzo v.
County Court, supra,* footnote 4, at page 646, quoted in *State v.
Alioto, supra,* footnote 3, at page 362.

[7] *State v. Alioto, supra,* footnote 3, at page 363, citing *Wolke
v. Fleming* (1964), 24 Wis. 2d 606, 618, 129 N. W. 2d 841; *State
v. Davidson* (1943), 242 Wis. 406, 8 N. W. 2d 275. *See also:
State ex rel. Rizzo v. County Court, supra,* footnote 4, at page
650, this court there holding: "Rizzo never claimed his privilege
as to questions about the Kenosha county activities and by answering he waived his right to claim immunity."

applying to prohibition offenses, an immunity statute substantially similar to sec. 133.24. When a defendant claimed immunity because he testified pursuant to the provisions of sec. 165.01, this court held failure to claim or assert the privilege against self-incrimination constituted waiver.[8] In the case before us, the respondent did claim his fifth amendment privilege not to answer a question concerning his participation in price rigging from 1960 to 1972. However, he claimed no privilege and volunteered an answer when asked if he had anything else he wanted to say to the grand jury. He claimed no privilege and voluntarily answered two additional questions, one concerning his keeping in contact with the company and the other concerning his office. We do not have here a *Miranda*-like situation where all interrogation must cease when a suspect exercises a fifth amendment privilege.[9] Here the claim of privilege arose and was made to a particular question asked. As this court has held, "Upon the question being propounded, the witness alone could know whether or not an answer given in accordance with the fact would tend to incriminate him. . . ."[10] The witness was within his constitutional right in refusing to answer a question where the answer to such question, in his judgment, might tend to incriminate him. But no bar is thereby raised to the asking of any other questions, and particularly not where, as here, the questions were not directed to the same target area. As to the three additional questions

---

[8] "By a long line of authorities, the defendant in this case having, upon the trial in which he testified, failed to claim his privilege, he waived it and cannot now claim immunity under sub. (25), sec. 165.01. The immunity statute can apply only where the privilege is claimed and the witness is compelled to answer. . . ." *State v. Grosnickle* (1926), 189 Wis. 17, 26, 206 N. W. 895.

[9] *See: Miranda v. Arizona* (1966), 384 U. S. 436, 474, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

[10] *State v. Grosnickle, supra,* footnote 8, at page 23.

asked, if the respondent felt that his answers to them tended to incriminate, he was free to claim the fifth amendment privilege as to any or all of them. This he did not do. Instead he voluntarily answered them, claiming no privilege, and by so doing waived the privilege not to answer.

*Compelled to testify.* Even with a claim of privilege against self-incrimination made, the *Rizzo Case* makes clear that, before immunity statutes apply, the witness must actually be compelled to testify under the statute.[11] Respondent and petitioners claim that compulsion arises from the very fact of testifying in response to a subpoena, but that contention is specifically rejected, and was, in fact, rejected in *Rizzo.*[12] For the immunity statutes to operate, there must be " '. . . evidence under *real compulsion, not mere right of compulsion.*' "[13] The witness, having claimed the privilege against self-incrimination to the questions asked, must be ordered or directed by one having authority so to do to answer

---

[11] *State ex rel. Rizzo v. County Court, supra,* footnote 4, at page 648, "Thus basically a witness will be immune from prosecution as to those offenses about which he testified if (1) he was actually compelled to testify under the statute, and (2) the testimony that he divulged while under compulsion is part of or led to evidence which supports the prosecution from which he claims immunity. . . ."

[12] ". . . I do not think that compelling a person to appear by subpoena can properly be considered as compelling him to testify. It was not so considered with regard to the constitutional guaranty. A person might be compelled by subpoena to attend, but might testify voluntarily when so in attendance, and thus waive his privilege. In like manner, I think he may waive his immunity. . . ." Mr. Justice WINSLOW, in an independent opinion in *State v. Murphy, supra,* footnote 2, at page 221, adopted one of the "fundamental rules" with regard to immunity statutes in *State ex rel. Rizzo v. County Court, supra,* footnote 4, at page 647.

[13] *Id.* at page 646, quoting and adopting statement from Mr. Justice MARSHALL's opinion in *State v. Murphy, supra,* footnote 2, at page 219.

under penalty of contempt for failing so to do.[14] As *Rizzo* makes clear, since the enactment by the legislature of sec. 885.34, Stats. (now sec. 972.08), ". . . there is the additional requirement that a witness will receive immunity only if compelled to testify 'by order of the court on motion of the district attorney.' . . ."[15] This prescribed procedure for judicial, not prosecutorial or ministerial,[16] granting of immunity is not an amendment to any particular state immunity statute. It prescribes the procedure, uniform and mandated, to be followed in the granting of immunity under all the state immunity statutes. Since there was, as to respondent or petitioners, no effort to compel testimony, the manner in which immunity is to be granted under sec. 972.08 is not here involved, since in no instance here did the situation develop to where the district attorney could move and the court could grant immunity.

*Tends to incriminate.* Finally, in this state a witness will be immune from prosecution under state immunity statutes only where ". . . the testimony that he divulged while under compulsion is part of or led to evidence which supports the prosecution from which he claims immunity."[17] Thus a witness ". . . has no right to claim the privilege where his answers could not be used

[14] ". . . The mere fact that he was clothed with apparent but not real authority to punish for contempt and to compel the attendance of witnesses and compel their answers makes no difference if the witness failed to claim his privilege and if no actual coercion was employed. . . ." *State v. Lloyd* (1913), 152 Wis. 24, 31, 139 N. W. 514.

[15] *State ex rel. Rizzo v. County Court, supra,* footnote 4, at page 648.

[16] *Id.* at page 648, stating, ". . . In *State ex rel. Jackson v. Coffey, supra* [(1963), 18 Wis. 2d 529, 118 N. W. 2d 939] this court held that 'order of the court' in the statute means an order issued from an open court sitting as such, not by a judge sitting as magistrate in a John Doe proceeding."

[17] *Id.* at page 648.

as a basis for, or in aid of, a prosecution against him." [18] State immunity statutes do " '. . . not immune because of evidence given other than that of a self-incriminatory character . . . .' " [19] In order to entitle a witness to the immunity granted by these immunity statutes, it follows that ". . . the evidence given by him must have been of a character which he was privileged to withhold under the constitutional provision. . . ." [20] The testimony the witness was compelled to divulge must be self-incriminating in nature. [21]

In the case before us, the answers voluntarily made by respondent to the three questions involved did not tend to indicate that the respondent was guilty of criminal misconduct. The answers given by respondent in no manner tend to convict the witness of any crime. The trial court found that the answers given did bear upon the question of the witness' credibility. But that is not the test. The testimony divulged while under compulsion, under the *Rizzo* test, must be part of or lead to evidence which supports the prosecution from which the witness, later defendant, claims immunity. That is not the situation here.

*Statutory construction.* Respondent and petitioners would have this court review the legislative history

[18] *Id.* at page 648, citing *Brown v. Walker* (1896), 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819.

[19] *Id.* at page 646, quoting (and adopting as a "fundamental rule") from Mr. Justice MARSHALL, in independent opinion, *State v. Murphy, supra,* footnote 2, at page 219.

[20] *Carchidi v. State, supra,* footnote 2, at page 444, this court also stating: ". . . Testimony given by him [the witness] which he is not privileged to withhold by reason of the constitutional provision does not entitle him to the immunity afforded by the statutes under consideration."

[21] ". . . the testimony given with relation to a transaction must tend to indicate that the witness is guilty of some criminality or else the immunity does not exist. . . ." *State v. Grosnickle, supra,* footnote 8, at page 24.

of sec. 133.24, Stats., to locate and implement a legislative intent that this particular statute, relating to antitrust prosecutions, be considered unique and different from all other state immunity statutes. It is exactly such individualized approach to construing the various state immunity statutes that was rejected in *Carchidi*.[22] There this court found and applied a common legislative purpose in the various state immunity statutes enacted by the legislature.[23] In *Carchidi* this court went beyond determining a common intent and purpose in all of the immunity statutes to reject the piecemeal approach to construing individual immunity statutes as leading to absurd results.[24] In the recent *Alioto Case*,[25] this court dealt with the construction and application of sec. 885.25 (2),[26] a statute similar in language used in

[22] *See:* footnote 2.

[23] *Carchidi v. State, supra,* footnote 2, at page 443. *See:* footnotes 5 and 6.

[24] ". . . While . . . upon a literal reading of the statute it must be held broader than the constitutional privilege, it must be agreed . . . that to so construe it would be to convict the legislative body of absurdity. A statute should not be construed so as to work an absurd result . . . ." *Id.* at page 443, adopting the opinion of Mr. Justice MARSHALL in *State v. Murphy, supra,* footnote 2.

[25] *State v. Alioto, supra,* footnote 3.

[26] Sec. 885.25 (2), Stats., provides: "No officer, clerk, agent, employe or servant of any corporation in any such action shall be excused from attending or testifying or from producing books, papers, tariffs, contracts, agreements, records, files or documents, in his possession or under his control, in obedience to the subpoena of any court in which any such civil action is pending or before any officer or court empowered or authorized to take deposition or testimony in any such action, in obedience to the subpoena of such officer or court, or of any officer or court empowered to issue a subpoena in that behalf, on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him, may tend to criminate him or subject him to a penalty or a forfeiture, but no such officer, clerk, agent, employer or servant shall be prosecuted, or subjected to any penalty or for-

sec. 133.24, the statute involved in the case before us.[27] In *Alioto*, this court followed the *Carchidi* over-all approach to the construction and application of various state immunity statutes,[28] as we have done in this decision.

Therefore, following the *Carchidi* construction of our state immunity statutes as coextensive with the constitutional privilege against self-incrimination and applying the *Rizzo-Alioto* tests on immunity from prosecution as to offenses about which a defendant testified before a grand jury, it is enough here to hold as to respondent, George Hall, that (1) he did not claim his privilege against self-incrimination as to the three questions involved; (2) he was not compelled to testify under the statute; and (3) the testimony that he divulged was not part of nor did it lead to evidence which supports the prosecution from which he claims immunity. As to defendant petitioners, John R. Clark, Herman M. Hinrichs, Thomas F. Montgomery, Robert T. Pharo and Clifford Reuschlein, we hold that (1) they did not at any time claim their privilege against self-incrimination; and (2) they were not compelled to give their testimony before the grand jury.

feiture, for or on account of any transaction, matter or thing concerning which he may testify or produce evidence, documentary or otherwise, before such court or officer, or any court or officer empowered to issue subpoena in that behalf, or in any such case or proceeding except a prosecution for perjury or false swearing in giving such testimony."

[27] For comparison of two statutes, *see* sec. 133.24, Stats., set forth in footnote 1.

[28] "While the ruling in *Carchidi, supra,* involved the construction of sec. 4078, Stats. 1923, and *Rizzo* involved sec. 885.34, Stats. 1965, such state immunity statutes are similar in language and exact in application to sec. 885.25 (2), Stats. . . . [S]uch immunity statutes as sec. 885.25 (2), are merely coextensive with defendant's fifth amendment rights against self-incrimination . . . ." *State v. Alioto, supra,* footnote 3, at pages 362, 363.

As to respondent's cross appeal from an order of the circuit court, dated March 12, 1974, denying his motion to dismiss the indictment on a variety of grounds other than immunity, the state's motion to dismiss such cross appeal is granted. Where the state appealed from that part of the circuit court's order suppressing a third lineup, this court permitted a cross appeal by the defendant as to a second lineup.[29] Not only were the proceedings in the *Beals Case* "totally interwoven," the two rulings regarding the lineups were in the same order. In the situation here, two separate court orders are involved. The state appeals from the order of the trial court, entered on May 14, 1974. The attempted cross appeal is from the earlier order of the trial court, dated March 12, 1974. The *Beals* requirement is that appeal and cross appeal be from the same order of the trial court. That is not the case here, so the motion to dismiss the cross appeal is granted. The motion by the state to strike a supplemental return filed July 8, 1974, is denied.

*By the Court.*—As to respondent, George Hall, the order granting respondent's motion to quash the indictment is reversed, and the case remanded for further proceedings. As to defendant petitioners, John R. Clark, Herman M. Hinrichs, Thomas F. Montgomery, Robert T. Pharo and Clifford Reuschlein, the order denying their motion to dismiss or quash the indictment on the ground of immunity under sec. 133.24, Stats., is affirmed. As to the cross appeal of respondent, George Hall, the state's motion to dismiss is granted. The motion by the state to strike a supplemental return filed July 8, 1974, is denied.

DAY, J., took no part.

---

[29] *State v. Beals* (1971), 52 Wis. 2d 599, 605, 191 N. W. 2d 221.